773 P.2d 1231 (1989)
107 N.M. 424
John NEWBERRY, Plaintiff-Appellee and Cross-Appellant,
v.
ALLIED STORES, INC. d/b/a T-Bird Home Centers, a New Mexico Corporation, and Derrell Ballard, individually and agent for Allied Stores, Inc., Defendant-appellant and Cross-Appellees.
No. 17712.
Supreme Court of New Mexico.
May 1, 1989.
*1232 S. Thomas Overstreet P.C., Alamogordo, for defendant-appellant and cross-appellees.
Eric Isbell-Sirotkin, Albuquerque, for plaintiff-appellee and cross-appellant.

OPINION
STOWERS, Justice.
Defendants-appellants, Allied Stores, Inc. d/b/a T-Bird Home Centers (T-Bird) and Derrell Ballard, appeal the verdict entered in favor of plaintiff-appellee, John Newberry. Newberry cross-appeals the granting of defendants' motion for a directed verdict on punitive damages for the breach of contract claim, on punitive damages for the claim about his trustworthiness, and on the emotional distress claim. We affirm the judgment of the district court on the cross-appeal, and reverse the verdict in favor of Newberry against defendants, except we remand the appeal for a new trial, limited to the issue of damages (compensatory and punitive) against defendant Ballard for the statement, "he was fired for stealing."
Newberry was employed by T-Bird from 1977 until he was terminated on December 19, 1984, by its general manager, Ballard. At the time of the discharge, Newberry managed a T-Bird store in Artesia, New Mexico. During the trial, Ballard testified he discharged Newberry because on two *1233 occasions Newberry had failed to timely fill out the appropriate charge slips for merchandise purchased from T-Bird, and these actions violated three company regulations: theft of company property or any form of dishonesty; gross insubordination; and flagrant violation of company policy.
On June 2, 1986, Newberry filed a complaint for damages alleging breach of an implied contract of employment, retaliatory discharge, defamation and intentional or reckless infliction of emotional distress. During the jury trial, the court granted defendant's motion to dismiss the claim of retaliatory discharge, and it is not a subject of this appeal.
At the conclusion of plaintiff's case, the trial court granted defendants' motion for a directed verdict on punitive damages for an implied contract, on punitive damages for the defamatory statement about Newberry's trustworthiness, and on the emotional distress claim. The jury in special interrogatories entered a verdict in favor of Newberry on the breach of an implied contract of employment in the amount of $77,811, and on the defamation claims in the amount of $36,818 for compensatory damages and $5,000 for punitive damages. The jury found that Newberry's employment was not terminable at will, but instead was subject to an implied contract requiring "good cause" for termination, and there was no good cause to discharge Newberry. The jury also found defendants had defamed Newberry during his termination and afterwards at a social function. The trial court denied defendants' motion for remittur and motion for judgment notwithstanding the verdict. All parties appeal.

1. Implied Contract of Employment

Defendants claim that, since Newberry had no express agreement of employment with T-Bird, Newberry was an employee at-will whose employment could be terminated with or without cause unless the termination violated some public policy. To bolster this contention, defendants argue the company policy manual has no specific procedures for termination that could give rise to an implied employment contract like the ones in Forrester v. Parker, 93 N.M. 781, 606 P.2d 191 (1980) and Lukoski v. Sandia Indian Management Co., 106 N.M. 664, 748 P.2d 507 (1988).
The common-law rule regarding the termination of an at-will employment contract is that if the employment is not for a definite term, and if there is no contractual or statutory restriction on the right of discharge, an employer may lawfully discharge an employee whenever and for whatever cause, without incurring liability for wrongful discharge. In recent years, however, there has been a growing trend toward a restricted application of this rule in order to comport with express and implied public policy, as well as statutory concerns.
* * * * * *
* * * [A] number of jurisdictions have held or recognized that under particular circumstances, the right of an employer to freely discharge at-will employees may be contractually restricted as a result of the promulgation of corporate employment policies specifying the procedures or grounds for discharge or termination of employees.
Annotation, Right to Discharge Allegedly "At-will" Employee As Affected By Employer's Promulgation of Employment Policies As To Discharge, 33 A.L.R. 4th 120, 123-24 (1984).
New Mexico recognizes an exception to at-will employment for an implied contract based on the words and conduct of the parties, Kestenbaum v. Pennzoil Co., 108 N.M. 20, 766 P.2d 280 (1988), including provisions in a personnel manual or a handbook, Forrester, 93 N.M. at 782, 606 P.2d at 192, and Lukoski, 106 N.M. at 665-67, 748 P.2d at 508-10. Where a manual or a handbook exists, it will not always change the at-will employment relationship if the manual or handbook is not sufficiently specific. Sanchez v. The New Mexican, 106 N.M. 76, 738 P.2d 1321 (1987). In Sanchez this court upheld the employer's contention *1234 that "the handbook lacked specific contractual terms which might evidence the intent to form a contract." Sanchez, 106 N.M. at 79, 738 P.2d at 1324.
Under New Mexico law, a personnel manual gives rise to an implied contract if it controlled the employer-employee relationship and an employee could reasonably expect his employer to conform to the procedures it outlined. Forrester, 93 N.M. at 782, 606 P.2d at 192. However, whether an employee handbook has modified the employment relationship is a question of fact to be discerned from the totality of the parties' statements and actions regarding the employment relationship. Lukoski, 106 N.M. at 666, 748 P.2d at 509; accord Boudar v. E.G. & G., Inc., 106 N.M. 279, 283, 742 P.2d 491, 495 (1987).
Evidence relevant to this factual decision includes the language used in the personnel manual as well as the employer's course of conduct and oral representations regarding it. We do not mean to imply that all personnel manual[s] will become part of employment contracts. Employers are certainly free to issue no personnel manual at all or to issue a personnel manual that clearly and conspicuously tells their employees that the manual is not part of the employment contract and that their jobs are terminable at the will of the employer with or without reason. Such actions ... instill no reasonable expectations of job security and do not give employees any reason to rely on representations in the manual. However, if an employer does choose to issue a policy statement, in a manual or otherwise, and, by its language or by the employer's actions, encourages reliance thereon, the employer cannot be free to only selectively abide by it. Having announced a policy, the employer may not treat it as illusory.
Lukoski, 106 N.M. at 666-67, 748 P.2d at 509-10 (quoting Leikvold v. Valley View Community Hosp., 141 Ariz. 544, 548, 688 P.2d 170, 174 (1984) (en banc)); see also Kestenbaum. Thus, this court held in Lukoski that a handbook distributed to all employees, signed and verified by each, and requiring warning and suspension procedures for termination gave rise to an employment contract.
Thereafter in Kestenbaum, this court's latest pronouncement on the issue of an implied employment contract, we stated that the totality of the parties' relationship, circumstances, and objectives will be considered to overcome the presumption that the employment contract was terminable at will. Notwithstanding the lack of a manual or handbook, we held in that case there was substantial evidence to support a jury finding of an implied employment contract allowing discharge only for good reason. This holding was based on the following evidence: a supervisor during the initial employment negotiations made it clear that the employment would be long term and permanent if plaintiff did his job; plaintiff would not have considered the job if offered on a short term basis; other employees testified that the employer required good cause for dismissal and did not maintain a "fire-at-will" management practice; and testimony was presented that the insurance benefits policy and severence pay plan made no mention of a termination without cause. Kestenbaum, 108 N.M. at 113, 766 P.2d at 285.
In line with Forrester, Lukoski, and Kestenbaum we hold there is substantial evidence in the instant case to support the jury's finding of an implied contract of employment between Newberry and T-Bird permitting termination only for good cause.
In the case at bar the court instructed the jury on the applicable law of employment contracts as follows: "An implied contract is an agreement in which the parties by a course of conduct have shown an intention to be bound by such agreement." SCRA 1986, 13-803 (emphasis added). Thus, to find an implied contract of employment, the jury was to consider evidence of all the parties' conduct, including their words and the policy manual. Newberry testified that when he took the job with *1235 T-Bird he understood he would have a great future there; during his training as a manager he was told that the company policy manual was "his bible," which he had to follow. Evidence indicated that this policy manual applied to hourly and salaried employees and the employees understood that termination from their jobs would be only for a good reason. Although the manual covered a variety of personnel-type matters, it also included a section on termination, as well as one on rules and regulation, a violation of which was "sufficient grounds for disciplinary actions ranging from a warning to immediate dismissal." The section on involuntary termination states: "To be discharged as the result of rule infractions, poor performance, or other `cause' is a situation you and only you, control." This statement suggests that it was T-Bird's policy not to terminate employment except for a good reason. Based on the totality of the parties' relationship and surrounding circumstances, it is clear that the manual controlled the employee-employer relationship and that Newberry could expect T-Bird to conform to the procedures in the policy guide. The manual, words and conduct of the parties here gave rise to an implied contract of employment.
Defendants claim, however, that regardless whether an implied contract of employment exists, Newberry was terminated for cause. Newberry was discharged for failing to timely fill out the appropriate charge slips for merchandise he purchased and removed from the T-Bird store. This failure to make out a proper charge slip was classified by T-Bird as dishonesty, gross insubordination and flagrant violation of company policy. According to that policy, an infraction of these company rules is sufficient grounds for immediate dismissal based on the severity of the infraction. Prior to Newberry's dismissal on December 19, 1984, he had previously been warned about failing to fill out a charge ticket for a lawn mower he had purchased and removed from the T-Bird store. At the time of Newberry's discharge, he had purchased and removed some items from the store for which he did not have a charge ticket.
Evidence presented at trial indicated that before an employee may take merchandise from the store, a charge ticket must be filled out and that this was understood by the employees of T-Bird to be company policy. Moreover, this policy applied to all employees including assistant managers and managers but that store managers had the discretion to "arrange a satisfactory payment schedule" with the employees. The company manual is devoid of any statement permitting a store manager to remove merchandise from a store without first completing the appropriate charge ticket.
On appeal, we resolve all disputed facts in favor of the successful party, indulge all reasonable inferences in support of a verdict, and disregard all evidences and inferences to the contrary. Vigil v. Sandoval, 106 N.M. 233, 237, 741 P.2d 836, 840 (Ct.App. 1987). In the present case, there is not substantial evidence to uphold the jury's verdict that Newberry was discharged without a good reason. Based on this conclusion Newberry is not entitled to an award of damages for breach of an implied employment contract. We reverse that portion of the verdict and enter judgment for defendants.

2. Defamatory Statements.

Defendants claim the two statements by Ballard, "I don't trust you" and "he was fired for stealing," are not defamatory because they are an expression of opinion, the truth or privileged. Moreover, defendants argue the verdicts were excessive, and that, as a matter of law, punitive damages were erroneously assessed against T-Bird.
The uncontroverted evidence at trial sets forth the following facts: On December 19, 1984, Ballard discharged Newberry in the back offices of the T-Bird store in Artesia. After Ballard emerged from these offices, Newberry followed him onto the store floor *1236 to discuss the matter further. An argument ensued at which time Ballard said in a loud voice, "I don't trust you." Then in May 1985 at a dinner, Ballard was asked by a former T-Bird employee, the spouse of a manager of a T-Bird store, why Newberry had been discharged. In response, Ballard stated, "he was fired for stealing." At trial, Ballard testified that he terminated Newberry for being dishonest based on Newberry's failure to fill out the charge slips timely, and that, he was not discharged "for theft."
The lines of demarcation between slander (an oral communication) and libel (a written communication), subcategories of defamation, have become sufficiently blurred that we agree "there are good reasons for abolishing the distinction between [them]." See Reed v. Melnick, 81 N.M. 608, 612, 471 P.2d 178, 182 (1970), overruled on other grounds, Marchiondo v. Brown, 98 N.M. 394, 649 P.2d 462 (1982) (Marchiondo II). Generally, the elements of a defamation action include: a defamatory communication, published by the defendant, to a third person, of an asserted fact, of and concerning *1237 the plaintiff, and proximately causing actual injury to the plaintiff. See SCRA 1986, 13-1002. A statement is deemed to be defamatory per se, if, without reference to extrinsic evidence and viewed in its plain and obvious meaning, the statement imputes to plaintiff: the commission of some criminal offense involving moral turpitude; affliction with some loathesome disease, which would tend to exclude the person from society; unfitness to perform duties of office or employment for profit, or the want of integrity in discharge of the duties of such office or employment; some falsity which prejudices plaintiff in his or her profession or trade; or unchastity of a woman. Marchiondo v. New Mexico State Tribune Co., 98 N.M. 282, 287-88, 648 P.2d 321, 326-27 (Ct.App. 1981), cert. quashed, 98 N.M. 336, 648 P.2d 794 (1982) (Marchiondo I). Any other communication, though not defamatory on its face, but which becomes defamatory when its meaning is illuminated by proof of extrinsic facts is actionable per quod. See id. at 288-89, 648 P.2d at 326-27. Traditionally, if a statement was found to be defamatory per se, damages to the reputation of the plaintiff were presumed. New York Times Co. v. Sullivan, 376 U.S. 254, 262, 84 S.Ct. 710, 716, 11 L.Ed.2d 686 (1964). This per se-per quod rule, however, has probably been overtaken by rulings of the United States Supreme Court, in New York Times, and its progeny through Dun & Bradstreet Inc., v. Greenmoss Builders, Inc., 472 U.S. 749, 105 S.Ct. 2939, 86 L.Ed.2d 593 (1985), which have held that, generally, damages cannot be presumed in a defamation action.
Under the now-existing law of defamation in New Mexico, the standard of strict liability no longer applies. Marchiondo II, 98 N.M. at 402, 649 P.2d at 470. Damages must be proved and cannot be presumed. Poorbaugh v. Mullen, 99 N.M. 11, 20, 653 P.2d 511, 520 (Ct.App.), cert. denied, 99 N.M. 47, 653 P.2d 878 (1982). In determining the correct standard of proof for damages, the relevant question is not whether the defamation is per se or per quod, but whether the plaintiff is a private or public figure. See Marchiondo II, 98 N.M. at 399, 649 P.2d at 467. The ordinary common-law negligence standard of proof applies to private defamation plaintiffs to establish liability, and proof of actual malice (knowledge of the falsity of the statement or reckless disregard of the truth) applies to the public official and public figure plaintiff. Id. at 402, 649 P.2d at 470. This establishes liability for compensation of actual injury.
Suffice it to say that actual injury is not limited to out-of-pocket loss. Indeed, the more customary types of actual harm inflicted by defamatory falsehood include impairment of reputation and standing in the community, personal humiliation, and mental anguish and suffering. Of course, juries must be limited by appropriate instructions, and all awards must be supported by competent evidence concerning the injury, although there need be no evidence which assigns an actual dollar value to the injury.
Id. (quoting Gertz v. Robert Welch, Inc., 418 U.S. 323, 350 (1974)). Further in New Mexico, a private defamation plaintiff must plead and prove special damages in order to recover them. Marchiondo II, 98 N.M. at 402, 649 P.2d at 470. Special damages encompass only pecuniary loss. Marchiondo I, 98 N.M. at 289, 648 P.2d at 328.
A public figure or public official plaintiff must also show the falsity of the statements at issue in order to prevail. Philadelphia Newspapers, Inc. v. Hepps, 475 U.S. 767, 774-76, 106 S.Ct. 1558, 1563, 89 L.Ed.2d 783 (1986). The traditional rule in New Mexico is that truth is an affirmative defense to an action for defamation, and as such, the defendant has the burden of pleading and proof on the issue. NMSA 1978, § 38-2-9 (Repl.Pamp. 1987). The treatment of truth as an affirmative defense remains where the plaintiff is a private figure. See Dun & Bradstreet. Where the plaintiff is a public figure or public official, he or she must prove the falsity of the statement as an element of defamation. Philadelphia Newspapers, 475 U.S. at 774-76, 106 S.Ct. at 1563.
As to punitive damages, they are recoverable if there is proof that the publication was made with actual malice. Marchiondo II, 98 N.M. at 403, 649 P.2d at 471. This requires proof by clear and convincing evidence that publication of the communication by the defendant was made with knowledge of its falsity or with reckless disregard of the truth. SCRA 1986, 13-1011; see also New York Times, 376 U.S. at 285-86, 84 S.Ct. at 728-29. The United States Supreme Court recently distinguished Gertz and declared that states may award punitive damages to private plaintiffs who are the subject of defamation on a matter not of public concern, even in the absence of malice as defined in Gertz. Dun & Bradstreet. We decline to follow Dun & Bradstreet on that issue.
In the instant case we agree with defendants that the statement, "I don't trust you," said during an argument is an expression of opinion and not a statement of existing fact. Whether a publication constitutes opinion or fact "depends upon whether ordinary persons hearing * * * the matter complained of would be likely to understand it as an expression of the speaker's * * * opinion, or as a statement of existing fact." Marchiondo II, 98 N.M. at 404, 649 P.2d at 472 (quoting Mashburn v. Collin, 355 So.2d 879, 885 (La. 1977)). A publication is not defamatory "merely because the opinion may be expressed in terms of strong invectives, profanity, or sarcastic language." Marchiondo I, 98 N.M. at 292, 648 P.2d at 331. The statement to Newberry was said in response to Ballard's discovery that Newberry had on two occasions failed to complete charge slips for merchandise he removed from the store, which was in violation of company policy. Under these circumstances, the statement is not actionable defamation. We reverse the damage award of $21,286 and enter judgment in favor of defendants on this issue.
There is substantial evidence to support the jury's verdict that the statement, "he was fired for stealing" is defamatory. To determine the amount of damages to which plaintiff is entitled, we must first ascertain plaintiff's status. Newberry is a private plaintiff and the subject of the defamation is a private matter. Accordingly, for Newberry to be compensated for actual injury, he must prove that Ballard negligently published the communication, and that, the communication proximately caused actual injury to plaintiff's reputation. The instruction to the jury said that plaintiff had the burden of proving one or more of the following injuries: harm to plaintiff's good name and character among friends, neighbors and acquaintances; harm to plaintiff's good standing in the community; personal humiliation; and mental anguish and suffering.
Testimony was presented that for a short period of time after his termination, *1238 Newberry stayed home, but, by the end of January 1985, he was employed and performed his job satisfactorily and continued to do so until the time he joined his wife's business in June 1985. There was also evidence that upon his discharge, Newberry was in shock, humiliated, his stomach was in knots, and his headaches reactivated his high blood pressure. The statement in question, however, was not made until May 1985, at which time Newberry was gainfully employed. There may not be substantial evidence to support the jury's verdict against defendants in the amount of $15,535 for actual damages. Moreover, there is no evidence that Ballard made the statement during the scope of his employment. "[E]mployers may be vicariously liable for compensatory damages which result from torts of employees acting within the scope of their employment, regardless of the culpability of the employer." Samedan Oil Corp. v. Neeld, 91 N.M. 599, 602-03, 577 P.2d 1245, 1248-49 (1978) (emphasis in original). Consequently, T-Bird cannot be held liable, because the statement by Ballard was not said during the scope of his employment.
For the jury to return a verdict of punitive damages against Ballard, the jury had to find by clear and convincing evidence that Ballard made the statement with actual malice (knowledge of its falsity or with a reckless disregard for whether it was false or not). Ballard testified that Newberry was not discharged "for theft," but for being dishonest. The jury returned a verdict of punitive damages against both defendants for $5,000. This verdict cannot stand against T-Bird. The law in New Mexico states that a master or employer is liable for punitive damages for the tortious act of an employee acting within the scope of his employment and where the employer in some way participated in, authorized or ratified the tortious conduct of the employee. Id. at 603, 577 P.2d at 1249. Again, the statement was not made during the course of Ballard's employment and, unless compensatory damages are first found, punitive damages cannot be awarded against T-Bird, the employer.
In sum, as to the statement, "he was fired for stealing," we reverse the award of damages against T-Bird; we reverse and remand for a new trial limited to the issue of damages, actual and punitive, against Ballard.

3. Newberry's Cross-Appeal.

Newberry cross-appeals the granting of defendants' motion for a directed verdict on three claims: punitive damages for the breach of an implied employment contract; punitive damages for the statement, "I don't trust you"; and intentional or reckless infliction of emotional distress. We will address each claim in seriatim.
The standard to be followed by the trial court in ruling on a motion for a directed verdict, and the scope of review of the evidence on appeal from a judgment entered upon a directed verdict, are set out in Melnick v. State Farm Mutual Automobile Insurance Co., 106 N.M. 726, 749 P.2d 1105, cert. denied, ___ U.S. ___, 109 S.Ct. 67, 102 L.Ed.2d 44 (1988), wherein it is stated:
Neither the trial court in ruling upon a motion for a directed verdict, nor an appellate court in reviewing the evidence on appeal from a judgment entered pursuant to a directed verdict, is authorized to consider only the evidence most favorable to the party opposing the motion. All the evidence must be reviewed, but, if there [are] conflicts or contradictions in the evidence, these conflicts must be resolved in favor of the party resisting the motion. Insofar as the properly admitted evidence is uncontroverted, it must be considered. However, if any uncontradicted evidence, including the reasonable inferences deducible therefrom, may reasonably be interpreted in different ways, then the interpretation most favorable to the resisting party must be accepted.
Id. at 728-29, 749 P.2d at 1107-08 (quoting Skyhook Corp. v. Jasper, 90 N.M. 143, 146, 560 P.2d 934, 937 (1977)).
*1239 Applying these considerations to the facts in the present case, we affirm the trial court's granting of the motion for a directed verdict on the above stated claims. While it is true that punitive damages are allowable in breach of contract cases, it is only upon a showing of bad faith by an employer during the course of a plaintiff's employment or in the manner and method used to terminate him. Boudar v. E.G. & G., Inc., 106 N.M. 279, 283, 742 P.2d 491, 495 (1987). Newberry failed to make this showing. Ballard terminated Newberry in the back offices of the store for violating company policy. Even though Ballard's method of termination, namely, shouting at Newberry, is not above reproach, it does not evince bad faith. Further, a defamation claim requires proof of actual malice for an award of punitive damages. Marchiondo II, 98 N.M. at 403, 649 P.2d at 471. Based on the facts herein, Ballard's statement, "I don't trust you," was not said with actual malice, that is, knowledge of its falsity or reckless disregard of the truth. Since reasonable minds cannot differ on the conclusion to be reached under the evidence presented, a directed verdict was proper.
Finally, the evidence does not support Newberry's claim that Ballard inflicted emotional distress upon him, either intentionally or recklessly. New Mexico follows the Restatement (Second) of Torts § 46 (1965), which describes the tort as follows: "One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm." The extreme and outrageous conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Dominguez v. Stone, 97 N.M. 211, 214, 638 P.2d 423, 426 (Ct.App. 1981) (quoting Restatement (Second) of Torts § 46 comment d (1965)). There was no evidence that Ballard's conduct rose to such a level in the present case. Ballard in a loud voice did discharge Newberry and did shout at Newberry on the sales floor, "I don't trust you;" however, this is not extreme and outrageous conduct.

4. Conclusion.

We affirm the judgment of the trial court granting defendants' motion for a directed verdict. We reverse the award of damages and enter judgment in favor of defendants on the breach of an implied employment contract and on the defamation count for the statement, "I don't trust you." As to the statement, "he was fired for stealing," we reverse the award of damages (compensatory and punitive) against T-Bird and enter judgment in its favor, and remand for a new trial, limited to the issue of damages, against Ballard.
IT IS SO ORDERED.
SOSA, C.J., and BACA, J., concur.