930 F.2d 32
 Unpublished Disposition
NOTICE: Tenth Circuit Rule 36.3 states that unpublished opinions and orders and judgments have no precedential value and shall not be cited except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel.
Charla K. BAYLISS, Plaintiff-Appellant,
v.
CONTEL FEDERAL SYSTEMS, INC., A Delaware Corporation,
successor-in-interest to Space Communications
Company, and Virgil True, an individual,
Defendants-Appellees.
 No. 89-2310.
 United States Court of Appeals, Tenth Circuit.
 March 21, 1991.
 
 Before STEPHEN H. ANDERSON, TACHA and BRORBY, Circuit Judges.
 ORDER AND JUDGMENT
 STEPHEN H. ANDERSON, Circuit Judge.
 
 
 1
 This action arose out of plaintiff's termination from her employment with Space Communications Company (Spacecom), the predecessor in interest to Contel Federal Systems, Inc.[1] Spacecom hired plaintiff in August of 1983. At the time of her discharge on June 7, 1985, she was working as a senior electronics technician on the Tracking Data Relay Satellite System (TDRSS) that Spacecom was installing at the White Sands Ground Facility in Las Cruces, New Mexico, under a contract with the NASA Goddard Space Flight Center.
 
 
 2
 Spacecom's contract with NASA covered both the installation and the maintenance and operation of the TDRSS. In the spring of 1985, as Spacecom neared the operation and maintenance phase of the project, NASA and Spacecom began negotiating a modification to the contract, which included changing from a fixed-cost to a cost-plus basis for payment. As part of the modification, NASA required Spacecom to revise its staffing plan. Under the new staffing plan, Spacecom had to reduce its personnel from 224 employees to 189 employees by September 1, 1985, as well as change the types of jobs to be performed. Taking into account normal attrition, Spacecom had to terminate twenty-two employees to meet the requirements of the new staffing plan. Plaintiff was one of the employees terminated under the reduction in force (RIF).
 
 
 3
 In her complaint, plaintiff alleged that Spacecom breached its implied contract of employment with her by terminating her without following the procedures outlined in two policy manuals. She also alleged that Spacecom and Virgil True, the NASA station director at the White Sands facility, engaged in unlawful and discriminatory employment practices in violation of Title VII, 42 U.S.C. Secs. 2000e through 2000e(17), and that they discharged her in violation of public policy. Plaintiff further alleged that Mr. True defamed her and tortiously interfered with her contract with Spacecom, and that Spacecom failed to pay her all compensation due, in violation of N.M.Stat.Ann. Sec. 50-4-4.
 
 
 4
 Spacecom moved to dismiss plaintiff's claims for breach of contract, failure to pay compensation, and discharge in violation of public policy. Mr. True moved to dismiss, or in the alternative, for summary judgment on, all plaintiff's claims against him. By order dated August 7, 1987, the district court granted Spacecom's motion as to the claim for discharge in violation of public policy, but denied the remainder of the motion. The court granted Mr. True's motion for summary judgment, concluding that he was absolutely immune from liability for plaintiff's claims for tortious interference and defamation, and that he could not be liable for the Title VII claims because he was not plaintiff's employer.
 
 
 5
 Spacecom subsequently moved for summary judgment on the remaining claims against it. By order dated August 15, 1988, the district court granted the motion as to plaintiff's claims for failure to pay compensation and breach of an implied covenant of good faith and fair dealing (which was asserted for the first time in the summary judgment documents), and denied the motion as to the contract and Title VII claims, concluding that genuine issues of material fact existed with respect to those claims.
 
 
 6
 On November 12, 1989, plaintiff and Spacecom proceeded to trial before the court on the contract and Title VII claims. At the conclusion of the trial, the district court ruled in favor of Spacecom. The court found that plaintiff did not have an implied contract of employment with Spacecom, and that even if she did, Spacecom did not breach it. With respect to plaintiff's Title VII claims, the court found that the RIF was legitimate and that there was no evidence, statistical or otherwise, that Spacecom discriminated against any employees on the basis of their gender in determining who to terminate; all the RIF candidates were chosen for legitimate business reasons. The court also found that Spacecom did not discriminate against plaintiff on the basis of her gender by failing to rehire her when she applied for positions in 1985 and 1989. Furthermore, the court concluded that plaintiff's claim for retaliatory failure to rehire was not properly before it because plaintiff did not raise the claim in her complaint before the New Mexico Human Rights Commission. To the extent the claim was before the court, it found that the undisputed evidence showed that the person who made the decision not to rehire plaintiff did not know she had filed a complaint with either the Human Rights Commission or the district court.
 
 
 7
 In the section of her appellate brief entitled "Statement of the Issues," plaintiff sets forth five issues:
 
 
 8
 I. Was Defendant True correctly dismissed from the complaint?
 
 
 9
 II. Did the Court err in granting defendant's motion for summary judgment on the claim for breach of implied covenant of good faith and fair dealing?
 
 
 10
 III. Did the Court err in dismissing Bayliss' claim for wrongful discharge in violation of public policy?
 
 
 11
 IV. Did the Court err in dismissing Bayliss' claims under Title VII of the Civil Rights Act of 1964?
 
 
 12
 V. Did the Court err in dismissing Bayliss' claim of breach of employment contract?
 
 
 13
 In the body of her appellate brief, however, plaintiff fails to discuss the second and third issues. Therefore, we will deem those issues waived and address only the other three issues. See Abercrombie v. City of Catoosa, 896 F.2d 1228, 1231 (10th Cir.1990).
 
 
 14
 We turn first to the district court's disposition of plaintiff's claims against Mr. True. Plaintiff's only arguments with respect to those claims are (1) that she named Mr. True in his individual, not his official, capacity, (2) that Mr. True hid behind his official position with NASA to advance his personal goals, which included ridding Spacecom of employees he did not like, and (3) that the district court prematurely dismissed the claims against Mr. True before plaintiff could produce evidence of Mr. True's complicity in her termination.
 
 
 15
 With respect to the last argument, the record does not reflect that plaintiff moved for a continuance of the summary judgment motion under Fed.R.Civ.P. 56(f) to conduct additional discovery or submit additional materials to the court. Plaintiff's "decision not to ask for a continuance evinces [her] willingness to stand on the submissions [she] had already made," Friedel v. City of Madison, 832 F.2d 965, 968 (7th Cir.1987), and she cannot complain on appeal that the district court ruled on the summary judgment motion prematurely.
 
 
 16
 Plaintiff's other arguments challenge only the district court's ruling that Mr. True was absolutely immune from liability on the tortious interference and defamation claims, not its ruling that Mr. True could not be held liable on the Title VII claims. Therefore, we will address only the ruling on absolute immunity.
 
 
 17
 After the district court granted summary judgment for Mr. True, but before it entered a final judgment in this case, Congress enacted the Federal Employees Liability Reform and Tort Compensation Act of 1988, Pub.L. No. 100-694, 102 Stat. 4563 (1988) (Reform Act), codified at 28 U.S.C. Sec. 2679 (1989), which applies to "all claims, civil actions, and proceedings pending on, or filed on or after" November 18, 1988, Pub.L. No. 100-694, Sec. 8, 102 Stat. 4565. This case was still pending in the district court on November 18, 1988, so the Reform Act applies to it. "The [Reform] Act provides that when a federal employee who was acting within the scope of his employment is sued for a common-law tort, the United States is substituted as a party defendant, and the exclusive remedy lies under the Federal Tort Claims Act against the United States." Moreno v. Small Business Admin., 877 F.2d 715, 716-17 (8th Cir.1989).
 
 
 18
 As part of its analysis of absolute immunity, the district court found that Mr. True was acting within the scope of his employment when he committed the actions of which plaintiff complained. In addition, after plaintiff filed her appeal, the United States Attorney General issued a certificate stating that Mr. True was acting within the scope of his employment. The Attorney General issued the certificate pursuant to 28 U.S.C. Sec. 2679(d)(1), which provides:
 
 
 19
 Upon certification by the Attorney General that the defendant employee was acting within the scope of his office or employment at the time of the incident out of which the claim arose, any civil action or proceeding commenced upon such claim in a United States district court shall be deemed an action against the United States under the provisions of this title and all references thereto, and the United States shall be substituted as the party defendant.
 
 
 20
 Plaintiff does not challenge either the district court's or the Attorney General's determination that Mr. True acted within the scope of his employment; she argues only that he acted with an improper motive. Therefore, pursuant to the Reform Act, the United States should be substituted for Mr. True and the case should proceed as one against the United States under the Federal Tort Claims Act (FTCA), 28 U.S.C. Secs. 1346, 2671-2680. See id. Sec. 2679(d)(1) and (4). "The terms of the government's consent to be sued define the court's jurisdiction [under the FTCA]," Ewell v. United States, 776 F.2d 246, 248 (10th Cir.1985), however, and the United States has not consented to be sued for "[a]ny claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights" by any federal employee who is not an "investigative or law enforcement officer[ ] of the United States." 28 U.S.C. Sec. 2680(h). Therefore, neither this court nor the district court has subject matter jurisdiction to entertain a claim against the United States for defamation or tortious interference with contractual relations.
 
 
 21
 In light of the foregoing, we will vacate the district court's judgment in favor of Mr. True on plaintiff's claims for defamation and tortious interference, and remand those claims to the district court with directions to substitute the United States as the party defendant and then dismiss for lack of subject matter jurisdiction. Since the district court determined that plaintiff essentially failed to state a claim for relief against Mr. True under Title VII, we need not determine whether the United States otherwise should be substituted as a party defendant on that claim. Instead, we simply may affirm the district court's judgment.
 
 
 22
 We turn next to plaintiff's claim for breach of implied contract. Plaintiff contends that she had an implied contract of employment with Spacecom based on the representations made to her at the time of her employment and the provisions of certain policy manuals. Under New Mexico law, whether a contract of employment can be implied depends on the "totality of the parties' relationship and surrounding circumstances," including the parties' words, conduct, and any policy manual. Newberry v. Allied Stores, Inc., 773 P.2d 1231, 1234-35 (N.M.1989). "[A] personnel manual gives rise to an implied contract if it controlled the employer-employee relationship and an employee could reasonably expect his employer to conform to the procedures it outlined." Id. at 1234. "[W]hether an employee handbook has modified the employment relationship is a question of fact...." Id.
 
 
 23
 The district court determined that plaintiff did not have an implied employment contract with Spacecom, and specifically found that "there is no provision in any procedure manual or policy manual of [Spacecom] that could be considered an employment contract that would give any rights to an employee in case of a RIF." Rec.Vol. III, tr. at 418. We review this finding of fact under a clearly erroneous standard. See Fed.R.Civ.P. 52(a) ("Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses."); Anderson v. City of Bessemer City, 470 U.S. 564, 573 (1985) (standard governing appellate review of district court's findings of fact is set forth in Rule 52(a)).
 
 
 24
 The record shows that the only manual Spacecom gave plaintiff during the course of her employment was the employee manual. Plaintiff, however, does not rely on the provisions of that manual; she relies solely on the Spacecom Policy Manual and the TDRSS Operations Handbook. Spacecom gave its Policy Manual only to members of management. Plaintiff testified that the one time she sought to consult the manual, concerning reimbursement for travel expenses, her supervisor questioned her extensively before he would permit her to look at the manual and then he limited her review to the provision(s) on travel expenses.
 
 
 25
 The New Mexico Supreme Court has held that " 'if an employer does choose to issue a policy statement, in a manual or otherwise, and, by its language or by the employer's actions, encourages reliance thereon, the employer cannot be free to only selectively abide by it.' " Lukoski v. Sandia Indian Management Co., 748 P.2d 507, 510 (N.M.1988) (quoting Leikvold v. Valley View Community Hosp., 688 P.2d 170, 174 (Ariz.1984) (emphasis added). In general, handbooks should not be given contractual effect unless the employee can establish that she knew of the provisions in question, that her employer induced her to rely on the provisions, and that she did in fact rely on them. See Williams v. Maremont Corp., 875 F.2d 1476, 1482-83 (10th Cir.1989) (applying Oklahoma law). Although New Mexico law is a bit unclear as to what an employee must show concerning reliance, the New Mexico courts have treated reliance as an important factor in determining whether an implied contract exists. See Paca v. K-Mart Corp., 775 P.2d 245, 246-47 (N.M.1989) (because handbook applied only to hourly employees and was not given to plaintiff, a salaried managerial employee, plaintiff "had no reason to rely on its contents"); Newberry v. Allied Stores, Inc., 773 P.2d at 1235 (handbook given to plaintiff during training as manager, who was told that it was "his bible," created implied contract); Lukoski v. Sandia Indian Management Co., 748 P.2d at 508-10 (manual distributed to all employees, who were required to acknowledge receipt and agree to conform to the provisions thereof, created implied contract). But see, McGinnis v. Honeywell, Inc., 791 P.2d 452, 457 (N.M.1990) (noting that other jurisdictions have either "rejected or significantly diluted" some or all of the elements of an implied contract, including reliance, in the employment context).
 
 
 26
 Here, plaintiff did not establish that she even knew of the provisions concerning termination in the Spacecom Policy Manual and the TDRSS Operations Handbook prior to her termination, much less relied on them. Furthermore, she did not present any evidence that Spacecom's conduct otherwise encouraged her to rely on the provisions in the manuals or created an implied contract of employment. To the contrary, the evidence showed that several members of Spacecom management told plaintiff during and after her termination that she could not rely on the provisions in the Policy Manual or the TDRSS Operations Handbook. As to the representations made to plaintiff when she was hired, Carl Reilly, who interviewed and hired plaintiff, testified that he told her that Spacecom had a ten-year contract with NASA, but did not promise her any specific term of employment. Based on the totality of the circumstances, the trial court's finding that there was no implied contract of employment between plaintiff and Spacecom was not clearly erroneous.
 
 
 27
 Even if Spacecom were otherwise bound to follow the procedures for termination set forth in its Policy Manual and TDRSS Operations Handbook, as the New Mexico Supreme Court suggested in Boudar v. E.G. & G., Inc., 742 P.2d 491, 495 (N.M.1987) (plaintiff may rely on personnel policy guide "simply as a means to assess his employer's procedure as to termination"), and Francis v. Memorial General Hospital, 726 P.2d 852, 853 (N.M.1986) ("where such a policy manual exists, the employer must follow the procedures therein governing termination, even for an employee at will"), the district court found there were no provisions in the manuals concerning the procedures to be followed in the event of a RIF. The record supports this finding, and plaintiff's counsel conceded the point in his argument before the district court. Furthermore, the record shows that Spacecom substantially complied with the general provisions concerning involuntary terminations. Therefore, we affirm the district court's entry of judgment in favor of Spacecom on plaintiff's claim for breach of implied contract.
 
 
 28
 We turn now to plaintiff's claims against Spacecom under Title VII. Although plaintiff did not include in her complaint before the New Mexico Human Rights Commission any allegation that Spacecom maintained a sexually hostile work environment, she did attempt to present such a claim to the district court. Spacecom contended below and on appeal that a claim for hostile work environment was not before the district court. We need not decide whether plaintiff adequately raised a claim for hostile work environment, however, because even if she did, the evidence to support such a claim is wholly lacking.
 
 
 29
 [H]ostile work environment harassment arises when sexual conduct "has the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile, or offensive working environment." "For [hostile work environment] sexual harassment to be actionable, it must be sufficiently severe or pervasive 'to alter the conditions of [the victim's] employment and create an abusive working environment.' "
 
 
 30
 Hicks v. Gates Rubber Co., 833 F.2d 1406, 1413 (10th Cir.1987) (citations omitted). Although the evidence in the record establishes that an atmosphere of unease and mistrust existed among the Spacecom employees at the White Sands Ground Facility, the evidence does not suggest that the atmosphere resulted from sexual harassment. Rather, the atmosphere resulted from ongoing conflicts between NASA and Spacecom regarding the performance of their contract, as well as uncertainties that arose when the parties began negotiating the modification to their contract.
 
 
 31
 Plaintiff contends that her claim for hostile work environment is supported by evidence that she was assigned clerical duties in her department when the other employees, who were males, were not. Plaintiff testified, however, that she was assigned those duties because she was the most capable of performing them well, and that she gladly agreed to perform them. Therefore, the district court's finding that Spacecom did not discriminate against plaintiff in her work assignments is not clearly erroneous.
 
 
 32
 Plaintiff also contends that the district court erred in entering judgment in favor of Spacecom on her claim for discriminatory discharge. The district court found that there was no evidence of Spacecom's intent to discriminate against anyone on the basis of gender in choosing which employees to terminate in the RIF. Plaintiff does not raise any issues of law regarding her claim for discriminatory discharge, so "our review is limited to a determination of whether the trial judge's factual findings of no discrimination are 'clearly erroneous' under Rule 52(a) of the Federal Rules of Civil Procedure." Reyes v. Hoffman, 580 F.2d 393, 394 (10th Cir.1978); see also, Thompson v. Rockwell Int'l Corp., 811 F.2d 1345, 1350 (10th Cir.1987) ("The Supreme Court has made clear that discriminatory intent, although it is the ultimate issue in Title VII cases, is still a factual question to be reviewed under the 'clearly erroneous' standard as prescribed in Rule 52(a), F.R.Civ.P.").
 
 
 33
 The district court specifically found that the RIF was not a subterfuge, but rather "was brought about by pressure from NASA to reduce the number of personnel, because the contract was going to a cost-plus basis," Rec.Vol. III, tr. at 417, and that Spacecom decided who to terminate in the RIF based on "legitimate business determinations to try to retain the best employees," id. at 419. Based on these findings, the court determined that Spacecom did not discriminate against plaintiff in discharging her. Our review of the record satisfies us that the district court's ultimate finding in favor of Spacecom is supported by substantial evidence and is not clearly erroneous.
 
 
 34
 Plaintiff also asserted a claim for discrimination in failing to rehire her when she applied for positions with Spacecom in 1985 and 1989. On appeal, she does not raise any issues of law; she argues only that the evidence showed she was not hired because Spacecom blackballed her based on her attitude and work habits, and that such blackballing "was retaliatory in furtherance of Spacecom's policy not to rehire RIFed personnel under any circumstances," Brief of Appellant at 34. Once again, our review is limited to determining whether the district court's findings of no discrimination are clearly erroneous. See Reyes v. Hoffman, 580 F.2d at 394.
 
 
 35
 We note at the outset that plaintiff's arguments on appeal do not challenge the district court's determination that Spacecom did not discriminate against her on the basis of her gender in failing to rehire her. In fact, her argument that Spacecom had a policy of not rehiring any employees who were terminated in the RIF supports the district court's findings, since only two of the twenty-two employees terminated in the RIF were women.
 
 
 36
 With respect to the 1985 failure to rehire, the district court found that although plaintiff was qualified for the position for which she applied, the court had "no reason to discount [the] reasoning [of Mr. Shelden, who made the hiring decision,] that he found the others to be at least as qualified as the plaintiff." Rec.Vol. III, tr. at 421. The court evidently based its finding, at least in part, on its determination that Mr. Shelden's testimony about Spacecom's reason for not rehiring plaintiff was entirely credible. "When findings are based on determinations regarding the credibility of witnesses, Rule 52(a) demands even greater deference to the trial court's findings...." Anderson v. City of Bessemer City, 470 U.S. at 575. Based upon our review of the record, we conclude that the district court's finding that Spacecom did not discriminate against plaintiff when it failed to rehire her in 1985 is supported by substantial evidence and is not clearly erroneous.
 
 
 37
 With regard to plaintiff's claim that Spacecom discriminated against her when it failed to rehire her in 1989, the district court found that Spacecom legitimately filled the position through an internal transfer. In order to prevail on her claim, plaintiff had to prove, among other things, that she applied for an available position for which she was qualified. See Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 253 (1981). The record shows that although Spacecom originally advertised for a senior electronics technician in 1989, the site manager put the position on hold pending a RIF, and, as part of the reorganization associated with the RIF, later determined that Spacecom needed another senior computer operator more than a senior electronics technician. Therefore, the position was reclassified to senior computer operator and an employee who otherwise would have been terminated in the RIF was transferred into the position. Thus, when Spacecom made its hiring decision, the position of senior electronics technician was no longer available. Plaintiff presented no evidence that she was qualified for the senior computer operator position, or that Spacecom's decision to reclassify the position was discriminatorily motivated. Therefore, the district court's ultimate finding in favor of Spacecom was not clearly erroneous.
 
 
 38
 Plaintiff does not present any argument in her brief on appeal concerning the district court's ruling on her claim for retaliatory failure to rehire. Therefore, we will deem the issue waived. See Abercrombie v. City of Catoosa, 896 F.2d at 1231. In light of the foregoing, we affirm the district court's ruling in favor of Spacecom on plaintiff's Title VII claims.
 
 
 39
 In sum, we affirm the district court's disposition of each of plaintiff's claims with the exception of her claims for tortious interference and defamation against Mr. True. Pursuant to the Reform Act and the other provisions of the FTCA, the United States should be substituted as the party defendant on the latter two claims, and then those claims should be dismissed for lack of subject matter jurisdiction. The judgment of the United States District Court for the District of New Mexico is AFFIRMED in part, VACATED in part, and REMANDED for further proceedings consistent with this opinion.
 
 
 
 [1]
 After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed.R.App.P. 34(a); 10th Cir.R. 34.1.9. The case is therefore ordered submitted without oral argument