**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUN 15 2000**

**PATRICK FISHER**
**Clerk**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

GEORGE R. SCHWARTZ, M.D.,

      Plaintiff-Appellant,

v.

AMERICAN COLLEGE OF
EMERGENCY PHYSICIANS,
AMERICAN MEDICAL
ASSOCIATION, BRIAN
MCCORMICK AND DOES 1
THROUGH 50, INCLUSIVE,

      Defendants-Appellees.

No. 98-2228

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**
**(D.C. No. CIV-97-1061-JP/LFG)**

Britton D. Monts, Law Offices of Britton D. Monts, P.C., Dallas, Texas for the
Appellant.

Martin R. Esquivel, Dines, Gross & Esquivel, P.C., Albuquerque, New Mexico,
for Appellees American Medical Association and Brian McCormick.

D. Bradley Kizzia, Strasburger & Price, L.L.P., Dallas, Texas, (Emily Franke,
Butt, Thornton & Baehr, Albuquerque, New Mexico with him on the briefs) for
Appellee American College of Emergency Physicians.

Before **ANDERSON** , **McKAY** , and **HENRY** , Circuit Judges.

**PER CURIAM.**

---

This diversity action arises out of an article authored by Brian McCormick, an American Medical Association ("AMA") employee, in which Mr. McCormick published statements concerning George R. Schwartz, M.D., made by American College of Emergency Physician's ("ACEP") President, John B. McCabe, M.D. Contending that the statements made by Dr. McCabe were materially false, Dr. Schwartz asserted a state law claim against ACEP, AMA and Mr. McCormick for defamation. The defendants filed substantially similar motions for summary judgment. Applying Fed. R. Civ. P. 56(c), the district court concluded that although there was sufficient evidence to show a genuine issue as to whether the statement was published with actual malice, presumably meaning that the statements may have been published with reckless disregard for their truth, Dr. Schwartz nevertheless failed to establish that the published statements were false.

Dr. Schwartz now appeals. For the reasons set forth below, we conclude that the district court properly granted summary judgment to the defendants.

## I. BACKGROUND

Dr. Schwartz is a physician and author specializing in the field of emergency medicine. In February 1994, Dr. Schwartz published an editorial

article in the *Emergency Medicine News* that was highly critical of the care provided by hospital management companies. He also appeared on the national television show, *The 700 Club*, discussing emergency medical issues relevant to this matter. On April 20, 1994, one such hospital management company, Coastal Healthcare Group, Inc. ("Coastal"), which is publicly traded, filed a defamation action against Dr. Schwartz in North Carolina state court, which was later dismissed.

In September 1994, Mr. McCormick published an article in the *American Medical News* titled "Emergency Medicine Contracting at Center of Libel Suit." Aplts' App. at 66. Within the article, Mr. McCormick wrote:

> One of the AAEM [American Academy of Emergency Medicine] tactics that most concerns Dr. McCabe is a solicitation last month to all board-certified emergency physicians seeking $100 donations to Dr. Schwartz' defense fund. "Their letter only mentions half the story, telling doctors that Dr. Schwartz is being sued for attacking contracting practices, but failing to mention that he is also being sued for stock fraud. I can't very well contact every emergency physician to tell them the rest of the story, but there is an ethical question here regarding Dr. Schwartz that physicians should know about."

Id. (quoting Dr. McCabe).

On August 11, 1996, Dr. Schwartz filed this defamation action, alleging statements regarding him in Mr. McCormick's article were materially false. Primarily, Dr. Schwartz contends that the allegation that he was "being sued for stock fraud," which alluded to the then-ongoing Coastal litigation in North

-3-

Carolina, was materially false in that it indicated that Dr. Schwartz had engaged in illegal stock trading activity and was being sued for his misconduct. Dr. Schwartz contends that his having taken a legal "short" position in Coastal's stock before his editorial was published, see Aplt's App. at 208-09, was undeservedly transmogrified into "stock fraud." [1] As a result of the negative connotations of the statement, Dr. Schwartz contends he has been wrongfully, and perhaps irreparably, scorned by his peers because of his alleged moral turpitude.

In response, the appellees assert that the statement at issue was an expression of opinion, not fact. They further contend that the statement's reference to the Coastal litigation was substantially true, in that Dr. Schwartz made the statement to influence the price of Coastal's stock. Finally, they argue that, as a public figure, Dr. Schwartz is unable to show that Mr. McCormick published Dr. McCabe's statement with malice.

---

[1] The selling short of a security is to take advantage of an anticipated decline in the price of a security, which is an activity regulated by Regulation T of the Federal Reserve Board. See 12 C.F.R. § 220.1- 220.132; see generally, John Downes & Jordan Elliot Goodman, Dictionary of Finance & Investment Terms 523 (4th ed. 1995). For example, to attain a short position, an investor who anticipates a decline in the price of a security may instruct her broker to sell short one hundred shares of that security while the security trades at $50.00 per share. The broker then lends the shares to the investor. The investor now has a short position. She does not own the securities, and must, at a designated time, repay the broker. If the price of the security declines by $10.00, she will purchase the shares for $4,000.00, repay the broker, and claim a $1,000.00 profit. See Downes & Goodman, supra at 523.

-4-

## II. DISCUSSION

### A. Standard of Review

"In reviewing a grant or denial of summary judgment, we apply the same standard applied by the district court under Fed. R. Civ. P. 56(c)." King v. Union Oil. Co. of Calif., 117 F.3d 443, 444-45 (10th Cir. 1997). Summary judgment is appropriate if "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). As we have noted, "the evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in [the nonmovant's] favor." Anderson v. Liberty Lobby, Inc. 477 U.S. 242, 255 (1986). Applying this standard, we conclude that Dr. Schwartz is unable to establish a genuine issue for trial. See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

### B. Elements of Defamation

Under New Mexico law, the elements of defamation include (1) a publication by the defendant, (2) of an asserted fact, (3) which is defamatory, (4) communicated to a third person, (5) of and concerning the plaintiff, (6) and proximately causing injury to the plaintiff. See Newberry v. Allied Stores, Inc.,

-5-

773 P.2d 1231, 1236 (N.M. 1989)    ; see N.M. Stat. Ann. Civ. U.J.I. 13-1007 (Michie 2000) (hereinafter, "U.J.I."). The fourth, fifth, and sixth elements are not contested in this appeal, so we shall discuss only the relevant elements as they are qualified by the facts before us.

But before we analyze the elements as listed above, in order to determine the correct standard of proof for damages, we must first determine whether or not the plaintiff is a public figure.    See Newberry , 773 P.2d at 1236. If the plaintiff is not a public figure or public official, the ordinary common law negligence standard of proof for damages applies.    See id. If we determine that the plaintiff is a public figure, or a public figure for a limited range of issues, the plaintiff must show the falsity of the statement at issue in order to prevail.    See Philadelphia Newspapers v. Hepps   , 475 U.S. 767, 775 (1986); U.J.I. 13-1006. In addition, a public-figure plaintiff must also establish proof of actual malice, which is knowledge of the falsity of the statement or reckless disregard of the truth. See Masson v. New Yorker Magazine, Inc.   , 501 U.S. 496, 510 (1991) (citing New York Times v. Sullivan   , 376 U.S. 254, 279-80 (1964));   Newberry , 773 P.2d at 1236.

In its October 7, 1998 order, the district court concluded that Dr. Schwartz "is a public figure for a limited range of issues."    Aplt's App. at 361. We agree. "Whether or not a person is a public figure is a question of law for the court."

Marchiondo v. Brown, 649 P.2d 462, 467 (N.M. 1982); see Ammerman v. Hubbard Broad., Inc., 572 P.2d 1258 (N.M. Ct. App. 1977). A public figure is a person who "'voluntarily injects himself or is drawn into a particular public controversy and thereby becomes a public figure for a limited range of issues.'" Furgason v. Clausen, 785 P.2d 242, 249 (N.M. Ct. App. 1989) (quoting Gertz, 418 U.S. at 351). Dr. Schwartz testified he "was a spokesperson for the ideas that were expressed in [his] editorial, and . . . [he] was held in high repute, . . . ." Aplt's App. at 110 (Schwartz Depo. at 184). Dr. Schwartz's pleadings stated that he:

> is a nationally-recognized pioneer in the professionalization of the field of Emergency Medicine, . . . a nationally recognized author in the Emergency Medicine profession who is editor-in-chief of a leading textbook used in medical schools nationwide, a scholar and researcher in the Emergency Medicine field . . . .

Aplt's App. at 11-12 (Complaint ¶ 9). Dr. Schwartz does not dispute that he has injected himself into the public controversy involved in this case. He states that when he wrote his February 1994 article, he was joining "other medical magazines and journals, as well as the national news media" who were reporting on similar practices involving multi-hospital contract management companies. Id. at 12. As such, we conclude that Dr. Schwartz is a public figure for purposes of this action.

## 1. Publication

Here, the parties do not contest the statement's republishing by defendants. Less clear is a republisher's liability under New Mexico law. Although New Mexico state courts have not addressed a republisher's liability for another party's defamatory statement, New Mexico generally follows the Restatement's approach in its law concerning the tort of defamation. See, e.g., Andrews v. Stallings, 892 P.2d 611, 615 (N.M. Ct. App. 1995) (quoting Restatement (Second) of Torts § 566 (1976)); Dominguez v. Stone, 638 P.2d 423, 425 (N.M. Ct. App. 1981) (quoting Restatement (Second) of Torts § 559).

The Restatement supports the view that "one who repeats or otherwise republishes defamatory matter is subject to liability as if he had originally published it," "[e]xcept as to those who only deliver or transmit defamation published by a third person." Restatement (Second) of Torts § 578. "[T]he republisher of a defamatory statement made by another remains subject to liability (Restatement (Second) of Torts § 578 (1977)), but he cannot be held liable unless he himself knew at the time when the statement was published that it was false, or acted in reckless disregard for its truth or falsity." Catalano v. Pechous, 419 N.E.2d 350, 361 (Ill. 1980). As such, the publication of Dr. McCabe's statement in Mr. McCormick's article could support Dr. Schwartz's claim for defamation against Mr. McCormick, ACEP, or AMA.

## 2. An asserted fact

In order for there to be liability, we must first confirm that the statement made is one capable of being defamatory–that is, the statement is factual--and not merely an expression of opinion. The First Amendment protects opinions under certain conditions. See Gertz v. Robert Welch, Inc., 418 U.S. 323, 339-40 (1974); Jefferson County School Dist. v. Moody's Investor's Servs., Inc., 175 F.3d 848, 852-54 (10th Cir. 1999). Certain expressions of opinion implicitly contain an assertion of objective fact, and such statements are not exempt from a defamation claim. See Milkovich v. Lorain Journal Co., 497 U.S. 1, 18-19 (1990); Gertz, 418 U.S. at 339-40.

New Mexico has adopted the following guidelines in an initial determination of whether a publication constitutes an opinion:

> [T]he crucial difference between statement of fact and opinion depends upon whether ordinary persons hearing or reading the matter complained of would be likely to understand it as an expression of the speaker's or writer's opinion, or as a statement of existing fact.

Machiondo v. Brown, 649 P.2d at 472 (quoting Mashburn v. Collin, 355 So.2d 879, 885 (La. 1977) (footnote omitted)). Whether the statement in question is one of fact or opinion is a question of law. See id.

To determine whether the statement is one of fact or opinion, we first inquire whether a reasonable factfinder could conclude that the quotation of Dr. McCabe's statement implied an assertion that Dr. Schwartz had engaged in stock

-9-

fraud.  See Jefferson County School Dist. , 175 F.3d at 853 . We also must consider whether the publication of the statement that Dr. Schwartz was being sued for stock fraud was "sufficiently factual to be susceptible of being proved true or false." Id.; see Milkovich , 497 U.S. at 21.

The "plain and ordinary meaning" of the statement that Dr. Schwartz was "being sued for stock fraud" implied that Dr. Schwartz had perhaps engaged in stock fraud. In addition, the statement is "sufficiently factual to be susceptible of being proved true or false." Jefferson County School Dist. , 175 F.3d at 853. We determine as a matter of law that the statement that Dr. Schwartz was "being sued for stock fraud" is an unambiguous statement of fact, and that Mr. McCormick was attempting to convey, not interpret, what Dr. McCabe said.

### 3. Defamatory statement

"To support a claim for defamation, the communication must be false." U.J.I. 13-1006. The burden is on the plaintiff to establish the falsity of the statement. See Masson, 501 U.S. at 517; Hepps , 475 U.S. at 774-76; U.J.I. 13-1002(B)(4); Newberry , 773 P.2d at 1237 .

It has long been accepted that "truth is an affirmative defense to an action for defamation." Newberry , 773 P.2d at 1237. The law of defamation overlooks inaccuracies and focuses on substantial truth. See Masson , 501 U.S. at 516;

U.J.I. 13-1006 "Minor inaccuracies do not amount to falsity so long as 'the substance, the gist, the sting of the [defamatory] charge can be justified.'" Masson, 501 U.S. at 517 (internal citation omitted). If the statement produces "'a different effect on the mind of the reader from that which the pleaded truth would have produced,'" we will consider it to be false. Id. (quoting R. Sack, Libel, Slander, & Related Problems 138 (1980)). As such, "[s]ubstantial truthfulness is a defense to an action for defamation." Ammerman, 572 P.2d at 1262; see U.J.I. 13-1006; Masson, 501 U.S. at 516-17.

Coastal filed claims of libel, slander and unfair and deceptive acts against Dr. Schwartz in North Carolina state court. See Aplt's App. at 149-60 (Coastal Complaint). Specifically, the Coastal complaint alleged that Dr. Schwartz made "false and defamatory statements" regarding Coastal in his February 1994 article in the *Emergency Medicine News*. The complaint also alleges that Dr. Schwartz made similar "false and defamatory statements" to stock analysts in an effort to deceive the public, to Coastal's customers, to Coastal's patients and potential patients, and to the public to cast doubt among the professional clinical community regarding Coastal's integrity. See id. at 159, ¶ 33. The Coastal complaint also asserted that Dr. Schwartz made such statements to "affect negatively (i.e., lower) the price of Coastal's stock" because, at the time, Dr. Schwartz held a "short" position in Coastal stock. See id. at 157, ¶ 24.

-11-

If Dr. McCabe had said Dr. Schwartz is "being sued for making deceptive statements made relating to stock transactions," this statement would be unquestionably true. The record indicates that Dr. Schwartz's counsel conceded as much. See Aplt's App. at 365 (Order at 7-8). Mr. McCabe asserts his statement that Dr. Schwartz was "being sued for stock fraud," although perhaps made with inattention to its legal accuracy was, under this record, only his layman's interpretation of Coastal's unfair and deceptive practices claim. See Aplt's App. at 142 (McCabe Affid. ¶ 8), 162. Also, even Dr. Schwartz's experts testified that a "reasonable interpretation," from a layman's perspective, of allegations of deceit for personal gain may be characterized as "fraud." Aplt's App. at 131, 136. Although technically inaccurate, the "gist" of Dr. McCabe's statement is substantially true and, therefore, cannot serve as the basis for a defamation action. Masson, 501 U.S. at 517; see U.J.I. 13-1006 ("Insignificant inaccuracies of expression are not sufficient" to support a communication that is "false in a material way.").

We agree with the district court that "[v]iewing the facts in the light most favorable to [Dr. Schwartz]," he is unable to establish the legal falsity of the statement published by the defendants. Aplt's App. at 365. As such, the defendants are entitled to judgment as a matter of law. See Masson, 501 U.S. at 517; U.J.I. 13-1002(B)(4); Newberry, 773 P.2d at 1237. We recognize the

accuracy of the district court's observation that the existence of malice is a factual issue that normally should survive summary judgment, but we are confused as to its relevance in this proceeding. Dr. Schwartz's inability to establish the falsity of the statement, an essential element of a defamation claim, obviates our consideration of evidence of malice. With this caveat, we AFFIRM the district court's grant of summary judgment in favor of the defendants and against Dr. Schwartz.