United States Court of Appeals,

Fifth Circuit.

No. 95-10884.

THOMPSON AND WALLACE OF MEMPHIS, INC., et al., Plaintiffs-Counter Defendants,

Thompson and Wallace of Memphis, Inc., Dawkins Trading, Inc., Jim Dawkins, and Carl G. Nichols, III, Plaintiffs-Counter Defendants-Appellees,

v.

FALCONWOOD CORPORATION, Defendant-Counter-Claimant,

and

Falconwood Financial Corporation and Falconwood Cotton Corporation, Defendants-Counter-Claimants-Appellants.

Dec. 4, 1996.

Appeal from the United States District Court for the Northern District of Texas.

Before POLITZ, Chief Judge, and SMITH and DUHÉ, Circuit Judges.

JERRY E. SMITH, Circuit Judge:

Falconwood Financial Corporation ("Falconwood Financial") and Falconwood Cotton Company ("Falconwood Cotton") (collectively "Falconwood") appeal a judgment on an adverse jury verdict for deceptive trade practices, negligence, and breach of fiduciary duty and on their two counterclaims. We affirm as to one counterclaim, reverse as to all other claims, and remand for a new trial.

I.

This litigation stems from a series of loans made by Falconwood to Thompson & Wallace ("T & W") and Dawkins Trading ("Dawkins"). Both Falconwood corporations are financial institutions engaged in cotton financing, with principal places of business in New York and shared offices in Memphis, Tennessee.

T & W and Dawkins are cotton merchants. T & W maintains its offices in Memphis, and Dawkins in Greenville, Mississippi. Falconwood Financial made secured lending available to cotton

1

merchants for 80% to 90% of the value of the underlying collateral. Its agreements with borrowers were governed by Loan and Security Agreements ("LSA's").

Falconwood Cotton advanced funds to customers by depositing money with Falconwood Financial so that a borrowing merchant's loan would be adequately margined. Its agreements with borrowers were governed by Margin Financing Agreements ("MFA's"). Both Falconwood companies did business with T & W and Dawkins, making substantial loans.

T & W, Dawkins, and the Spradlings, a group of nine other persons who are Texas residents, sued Falconwood in Texas state court under the Deceptive Trade Practices Act ("DTPA") and for negligence and breach of fiduciary duty. Falconwood removed to federal court on diversity grounds and filed a counterclaim to recover on the loans it had made to the plaintiffs.

The jury returned a verdict in favor of the plaintiffs on all claims and found against Falconwood on all the counterclaims. The jury awarded T & W $2,562,282, Dawkins $1,875,188, and the Spradlings $2,590,185. Falconwood since has settled with the Spradlings, and the verdict in favor of them is no longer at issue.

## II.

## A.

Falconwood contends that the district court should have dismissed the DTPA claim because it is a Texas st atutory cause of action, and Texas law does not apply to the relationship between Falconwood and the plaintiffs. As a threshold matter, we must decide whether Falconwood preserved this argument before the district court.

Falconwood made a FED.R.CIV.P. 50(a) motion to dismiss the DTPA claim, which was denied, but did not object to the inclusion of the DTPA instructions in the jury charge. The plaintiffs contend that this failure waives appellate review, the rule 50(a) motion notwithstanding.[1]

---

[1] For the first time at oral argument, plaintiffs asserted that a rule 50(a) motion is not the appropriate vehicle for a choice-of-law argument. We will not consider an issue not raised in briefing. *See Northwinds Abatement, Inc. v. Employers Ins.,* 69 F.3d 1304, 1308 n. 3 (5th Cir.1995) (per curiam); *Cinel v. Connick,* 15 F.3d 1338, 1345 (5th Cir.), *cert. denied,* --- U.S. ----, 115 S.Ct. 189, 130 L.Ed.2d 122 (1994).

We are guided by *Hamman v. Southwestern Gas Pipeline, Inc.,* 821 F.2d 299 (5th Cir.), *modified on other grounds,* 832 F.2d 55 (5th Cir.1987) (per curiam), which involved whether the defendant had a right to be on the plaintiffs' property. This legal issue was mentioned in the pretrial order and argued before the district court. The defendant, however, did not object to the jury instruction. We held that where the questions of fact are uncontested and the question of law is brought to the court's attention, an objection to the jury charge is not necessary. *See id.* at 303. Although the instant case does not involve an uncontested question of fact, we extend this principle to situations where the appealing party does not challenge the jury's fact finding, only its right to decide the issue altogether.

The contrary rule would require a party to object to a charge that it believes is a perfectly accurate statement of the law and that is not confusing to the jury, even though the court already has decided the legal issue. *Cf. Pierce v. Ramsey Winch Co.,* 753 F.2d 416, 425 (5th Cir.1985) (stating that an adequate jury instruction cannot be grounds for reversal). This would be an unwise use of judicial resources.

## B.

Falconwood asserts that the choice-of-law provisions in the LSA's and MFA's require the application of New York law, and thus a Texas statutory action cannot be maintained. The contracts state that the choice-of-law provisions apply to the "agreement and its enforcement." The personal jurisdiction and jury trial provisions, on the other hand, are much broader. Narrow choice-of-law provisions are to be construed narrowly. *See Caton v. Leach Corp.,* 896 F.2d 939, 943 (5th Cir.1990). The tort causes of action are separate from the agreement and its enforcement, and thus the choice-of-law provision does not govern them. *See id.* (same conclusion under similar choice-of-law clause); *Busse v. Pacific Cattle Feeding Fund # 1, Ltd.,* 896 S.W.2d 807 (Tex.App.—Texarkana 1995, writ denied) (same).

## C.

In *Duncan v. Cessna Aircraft Co.,* 665 S.W.2d 414 (Tex.1984), the court adopted the

Restatement's approach to conflict of law, requiring the use of the "most significant relationship approach." *Id.* at 420;  *see* RESTATEMENT (SECOND) OF CONFLICT OF LAW § 145 (1969).  Among the relevant considerations are (1) the place of injury;  (2) the place of conduct;  (3) the domicile of the parties;  and (4) the place where the relationship between the parties is centered. *See de Aguilar v. Boeing Co.,* 47 F.3d 1404, 1413 (5th Cir.), *cert. denied,* --- U.S. ----, 116 S.Ct. 180, 133 L.Ed.2d 119 (1995).

The only suggested contact with Texas is the purchase of Texas cotton.  Contrary factors are that (1) the injury occurred in Tennessee and Mississippi (where T & W and Dawkins, respectively, are based);  (2) the conduct occurred in New York;  (3) the parties are domiciled in New York, Tennessee, and Mississippi;  and (4) the relationship was centered outside of Texas.  In short, Texas is not the state with the "most significant relationship," and the DTPA cannot apply.  The DTPA claim must be dismissed.

## III.

## A.

Falconwood raises several objections to the jury instructions, protesting the exclusion of some proposed language, the failure to distinguish the two Falconwood legal entities, and the separation of goodwill and lost profits as damage elements.  As a threshold matter, we must decide whether Falconwood preserved its right to appellate review by properly objecting under FED.R.CIV.P. 51.

When the district court asked for objections to the charge, the plaintiffs presented their proposed instructions and offered to "go through each one of them, and state what they are, for the record," but the court directed them to submit the objections as a package.  The court, however, did allow the plaintiffs to make a specific objection that did not complain of failure to include a proposed instruction.  The court then ordered Falconwood to do the same.

Because the court did not allow the parties to make individualized objections to failure to include their proposed language, the parties did not waive their right to appellate review.  The

4

contrary rule would require litigants to disregard a court's directive and risk the court's ire. While that might be necessary in other contexts, it was not called for here.

*Crist v. Dickson Welding, Inc.,* 957 F.2d 1281 (5th Cir.), *cert. denied,* 506 U.S. 864, 113 S.Ct. 187, 121 L.Ed.2d 132 (1992), is on point. There, a party had made his objection plain at the charge conference but did not object at the close of instructions, because the district court already had ruled against him and had expressed a desire to expedite the proceedings. We found no waiver. *See id.* at 1287.

Thus, Falconwood's objection was sufficient to preserve review of its claim that the district court should have included its proposed language. As to the failure to distinguish between the two Falconwood legal entities and the court's separation of goodwill and lost profits as damages elements, Falconwood's proposed instructions were inctions. Thus, Falconwood has waived review of that portion of the instructions.

B.

The court instructed the jury that a joint venture existed between the plaintiffs and Falconwood. Falconwood's proposed instructions plainly stated that the jury should decide whether a joint venture existed. Under Texas law, the existence of a joint venture is a question of fact for the jury. *See Norman v. Apache Corp.,* 19 F.3d 1017, 1023 (5th Cir.1994).[2] Because the charge instructed the jury that a joint venture existed, the charge effectively was a directed verdict. Thus, we review the decision *de novo,* viewing the facts in the light most favorable to Falconwood. *See Enlow v. Tishomingo County,* 45 F.3d 885, 888 (5th Cir.1995) (per curiam).

We have reviewed the relevant portions of the record, and the evidence of a joint venture is not overwhelming. Most of the evidence revolves around the nomenclature of certain accounts that were renamed before the incidents in question. The evidence of profit-sharing is ambiguous. Accordingly, the district court's implicit ruling that a joint venture existed as a matter of law was legal

---

[2]Neither side suggests that the existence of a joint venture would not be a question of fact for the jury under the law of any state that might govern this action on remand. Thus, we consider any such argument to be waived. *See* FED. R.APP. P. 28(a)-(b).

error.

C.

Falconwood wanted to raise the affirmative defenses of contributory negligence and waiver.[3] Although Falconwood did not plead these defenses in its answer, they were tried by implied consent when the plaintiffs did not object to the admission of evidence regarding them. *See Jones v. Miles,* 656 F.2d 103, 107 n. 7 (5th Cir. Unit B Aug.1981). The district court refused to instruct on these defenses. Because this amounts to a directed verdict, we review it *de novo.*

Contributory negligence and waiver were contested and genuine issues of fact. Falconwood presented evidence that T & W followed inadequate accounting procedures and did not review statements from Falconwood; that Dawkins similarly followed inadequate accounting procedures; and that both plaintiffs tried to continue a business relationship with Falconwood after discovering Falconwood's misconduct. This is sufficient evidence to bar a directed verdict.

D.

In Falconwood's counterclaim against T & W, a key issue was whether T & W's controller had the authority to bind T & W when he secured a loan with bogus invoices or whether, instead, he was a rogue employee hurting his employer, with Falconwood's collusion. The district court refused Falconwood's request for a jury instruction on agency. The court has wide latitude in writing the instructions, and we review to determine whether "the charge as a whole leaves us with substantial and ineradicable doubt whether the jury has been properly guided in its deliberations." *Bommarito v. Penrod Drilling Corp.,* 929 F.2d 186, 189 (5th Cir.1991) (quoting *Treadaway v. Societe Anonyme Louis-Dreyfus,* 894 F.2d 161, 168 (5th Cir.1990)).

The agency issue was complicated. There were questions of apparent authority, ratification, and whether Falconwood could be responsible for its own agent's conduct when the agent may not

---

[3]As to the contributory negligence, waiver, and agency issues, Falconwood argues that the law is substantially the same under both New York and Texas law. The plaintiffs make no suggestion that the result would be different under any applicable state law. Again, we find that any choice-of-law argument in the analysis of these issues is waived.

6

have acted in Falconwood's interests. These are complex legal theories that a layman might not understand. All the jury was told was that "in general, any agent or employee of a corporation may bind the corporation by his acts and declarations made while acting within the scope of his authority, delegated to him by the corporation or within the scope of his duties as an employee of the corporation."

Under the circumstances, this was inadequate. The district court abused its discretion by not addressing agency law in more detail.

## IV.

## A.

Falconwood contends that the district court should have dismissed all of the plaintiffs' claims for lack of evidence of damages. Falconwood did not make this issue part of its preverdict rule 50(a) motion for judgment as a matter of law but did make it part of its post-verdict rule 50(b) motion for judgment as a matter of law.

Generally, a party must make both a pre-verdict rule 50(a) motion and a post-verdict rule 50(b) motion to preserve the right to appellate review. The purpose of this is judicial efficiency (because if there is insufficient evidence, the court's time need not be wasted further) and to call inadequate evidence to the court's attention.

In some cases, a party fails to make a rule 50(a) motion but makes a rule 50(b) motion, and the non-moving party fails to raise the waiver argument in opposing the rule 50(b) motion. Four of our sister circuits have held that, in such a circumstance, the opposing party cannot raise the waiver on appeal.[4] This is a wise rule that allows the district court to hear the waiver allegation and report whether the party that failed to make the motion had a legitimate excuse (where, for example, the court instructed the litigant not to make the rule 50(a) motion). Furthermore, it promotes judicial

---

[4]*See Gibeau v. Nellis,* 18 F.3d 107, 109 (2d Cir.1994); *Collins v. Illinois,* 830 F.2d 692, 698 (7th Cir.1987); *Beauford v. Sisters of Mercy-Province of Detroit, Inc.,* 816 F.2d 1104, 1108 n. 3 (6th Cir.), *cert. denied,* 484 U.S. 913, 108 S.Ct. 259, 98 L.Ed.2d 217 (1987); *Halsell v. Kimberly-Clark Corp.,* 683 F.2d 285, 293-95 (8th Cir.1982), *cert. denied,* 459 U.S. 1205, 103 S.Ct. 1194, 75 L.Ed.2d 438 (1983).

efficiency by allowing the court to dispose of the rule 50(b) motion without having to address the merits.

We joint these circuits and adopt their rule. Because the plaintiffs did not raise the waiver bar in opposing the rule 50(b) motion, they may not raise that bar on appeal.

## B.

Absent waiver (and under Texas law), we review "whether a reasonable person could find [the profits] were not speculative, but were proved with reasonable certainty." *Hiller v. Manufacturers Prod. Research Group of N. Am., Inc.,* 59 F.3d 1514, 1522 (5th Cir.1995).[5] The standard for review is exacting, and we must consider all evidence in the light most favorable to the plaintiffs. *See id.* The fact that the business in question does not have a profit history is not dispositive, *see id.* at 1520-21, but the estimates "must be based on objective facts, figures, or data from which the amount of lost profits can be ascertained." *Holt Atherton Indus. v. Heine,* 835 S.W.2d 80, 84 (Tex.1992).

The plaintiffs met their burden of proof. T & W introduced evidence of cancellation penalties, profits margins, and lost customers. They also produced historical information about the sales to those lost customers and trends in those annual sales figures. Dawkins introduced similar evidence. Most of the evidence was in the form of the plaintiffs' own corporate officers testifying about the business's history, but the jury was entitled to make credibility judgments.

## V.

Falconwood asserts that the district court should have granted it judgment as a matter of law on its counterclaims. Falconwood made rule 50(a) and rule 50(b) motions for the counterclaim against T & W but not for the counterclaim against Dawkins. Thus, Falconwood has waived appellate review of the counterclaim against Dawkins.

As to the counterclaim against T & W, we review the refusal to grant the counterclaim *de*

---

[5]As both sides argue this issue under Texas law, we apply Texas law in our analysis and assume that no one disputes its applicability.

*novo,* viewing the facts in the light most favorable to the plaintiffs. *See RTC v. Cramer,* 6 F.3d 1102, 1109 (5th Cir.1993). There were contested issues of material fact as to (1) whether T & W's controller had the authority to create the contract; (2) the accuracy and completeness of Falconwood's records; and (3) whether Falconwood colluded with dishonest employees of T & W. A reasonable jury could have found for the plaintiffs on the counterclaims.

## VI.

The parties' agreements make New York the exclusive venue, but only for suits "with respect to this Agreement." For the reasons discussed regarding the choice-of-law provision, this clause does not govern tort claims where the agreement is raised only in counterclaim. Falconwood raises no objection to the forum selection other than its contract. We note, however, that with the Spradlings no longer a party to this dispute, Texas may no longer be the appropriate venue for this lawsuit. We entrust to the district court's discretion the appropriate choice for venue for the retrial.

## VII.

In conclusion, we affirm the judgment on the verdict on the counterclaim against Dawkins. We reverse the judgment on the verdict as to the DTPA claim and direct a dismissal. We reverse the judgment on the verdict on the negligence claim, breach of fiduciary duty claim, and counterclaim against T & W. We instruct the district court to give contributory negligence and waiver instructions, to have the jury determine whether a joint venture exists, to give a more detailed agency instruction, and to distinguish the Falconwood legal entities. We leave to the court's sound discretion the determination of the proper venue for retrial. The judgment is AFFIRMED in part, REVERSED in part, and REMANDED for further proceedings.