**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUN 14 1999**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

KATHIE BRILLHART,

      Plaintiff-Appellee,

v.

PHILIPS ELECTRONICS NORTH
AMERICA CORPORATION, doing
business as Philips Medical Systems,
N.A.,

      Defendant-Appellant,

and

KATHIE BRILLHART,

      Plaintiff-Appellant,

v.

PHILIPS ELECTRONICS NORTH
AMERICA CORPORATION, doing
business as Philips Medical Systems,
N.A.,

      Defendant-Appellee.

No. 97-2398

No. 98-2077

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**
**(D.C. No. CIV-94-0025-MV)**

Submitted on the briefs:[*]

Phillip Baca, Albuquerque, New Mexico, for Plaintiff-Appellee/Appellant.

Duane C. Gilkey and Charles W. Weese of Gilkey, Stephenson & Weese, P.A., Albuquerque, New Mexico, for Defendant-Appellant/Appellee.

Before **SEYMOUR,** Chief Judge, **HENRY,** Circuit Judge, and **McWILLIAMS,** Senior Circuit Judge.

**McWILLIAMS,** Senior Circuit Judge.

On May 4, 1992, Kathie Brillhart ("Brillhart") was hired by Philips Electronics North America Corporation, doing business as Philips Medical Systems, N.A. ("Philips"), which company manufactures and sells sophisticated medical imaging equipment, to act as its sales representative in New Mexico. Eight months later, on January 28, 1993, Brillhart was given a notice of termination by her supervisor, Bruce Campbell. In December 1993, Brillhart filed an action against Philips in a state court of New Mexico alleging that she was unlawfully discharged by Philips. In January 1994, Philips removed the case to the United States District Court for the District of New Mexico on the grounds

---

[*] In No. 97-2398, Brillhart did not request oral argument, but Philips did. The case was set for oral argument on March 9, 1999. Prior thereto, counsel for Philips requested a continuance of oral argument because of a schedule conflict. Counsel later indicated that submission on the briefs was satisfactory. Accordingly, No. 97-2398 was ordered submitted without oral argument. In No. 98-2077, neither party requested oral argument.

of diversity, Brillhart being a citizen and resident of New Mexico and Philips being a Delaware corporation with its principal place of business in New York. 28 U.S.C. §§ 1441 and 1446.

Brillhart filed a First Amended Complaint containing six claims for relief in the United States District Court for the District of New Mexico. In Count 1 Brillhart alleged that her employment with Philips was terminated because she was a female, in violation of the New Mexico Human Rights Act. N.M. Stat. Ann. §§ 28-1-1, *et seq.* In Count 2 Brillhart alleged that her termination was in retaliation for her complaining about sexual discrimination in violation of the same Human Rights Act. The remaining four counts were for common law retaliatory discharge, common law unlawful discharge, and two counts based on breach of contract. The last four counts were otherwise disposed of prior to trial on the first two counts of the complaint.

After a two-week trial, the jury returned a verdict in favor of Philips on both of the remaining counts. Judgment to that effect was duly entered on April 26, 1996. Thereafter, Brillhart filed a motion for judgment as a matter of law on her retaliation claim, and also sought a new trial on her claim of gender discrimination. *See* Fed. R. Civ. P. 50 and 59. On August 1, 1996, the district court denied Brillhart's motion for a new trial on her gender discrimination claim, but granted her motion for judgment as a matter of law on her claim of retaliatory discharge, and entered judgment to that effect. Philips filed a notice of appeal. That appeal, our No. 96-2175, was dismissed by this court on

April 1, 1997 for lack of jurisdiction, the court noting that the district court's order granting Brillhart's motion for judgment as a matter of law was not a final, appealable judgment since the amount of damages had not yet been determined.

On remand, the issue of damages was tried to a second jury before a different judge. The jury awarded Brillhart compensatory damages in the amount of $115,000 and punitive damages in the amount of $500,000. Judgment to that effect was entered on August 11, 1997. Philips later moved under Fed. R. Civ. P. 59 and 60 for judgment as a matter of law on the punitive damage claim, or, in the alternative, for an appropriate reduction of the jury's punitive damage award. On December 4, 1997, the district court denied Philips' motion. Philips now appeals the judgment. (Our No. 97-2398).

On appeal, there are two basic issues: (1) did the district court err in granting Brillhart's motion for judgment as a matter of law on her retaliatory discharge claim; and, (2) if the district court did not so err, did the district court thereafter err in not granting Philips' motion for judgment as a matter of law on Brillhart's punitive damage claim, or, alternatively, in at least not reducing the punitive damage award. Our study of the matter convinces us that the district court erred in granting Brillhart's motion for judgment as a matter of law on her claim of retaliatory discharge, and that the judgment for Philips based on the verdict of the first jury should be reinstated. Accordingly, we need not consider the issue of punitive damages. A recital of the background facts will place this

- 4 -

controversy in focus.[1]

As indicated, Brillhart commenced her employment with Philips on May 4, 1992 and was terminated by her supervisor, Bruce Campbell, on January 28, 1993. The record is replete with evidence of continued friction between Brillhart and Campbell, as well as with other supervisors, all of which led up to Brillhart's termination. However, it was Brillhart's belief, and she so testified, that she was terminated because she was an "uppity" female. As indicated, Philips' evidence was that she was discharged because of poor job performance. Be that as it may, the jury found for Philips on Brillhart's first claim based on discharge because of her gender, and that claim is not involved in the present appeal. We are here concerned with Brillhart's second claim based on retaliatory discharge. As stated, the jury also found for Philips on this claim, but the district court granted Brillhart's post-trial motion for judgment on her claim of retaliatory discharge, which Philips challenges on appeal.

As stated, Brillhart was discharged by Campbell on January 28, 1993, and her retaliatory discharge claim has its genesis in a letter she wrote to Campbell on January 19, 1993. In that letter, Brillhart spoke in her very first sentence as follows: "It is my

---

[1]On January 5, 1998, Brillhart filed a motion for attorney's fees in the amount of $133,197. That motion was denied by the district court on February 13, 1998, on the ground that the motion was not timely filed. Brillhart filed a timely notice of appeal, our No. 98-2077, to the order of the district court's denying her request for attorney's fees. In view of our disposition of this date in No. 97-2398, No. 98-2077 is now moot, since Brillhart is no longer the prevailing party.

contention that a case has been built against me because I'm female."

Counsel for Brillhart, as a part of his case in chief, called Bruce Campbell, described by the district court as an "adverse witness." *See* Fed. R. Evid. 611(c). During such examination, the following colloquy between Brillhart's counsel and Campbell occurred.

> Q.    Well then, let's move to the January 19th letter, which would be Exhibit 8. Now, you consider Kathie Brillhart's January 19th letter to be hostile; is that correct?
>
> A.    That's correct.
>
> Q.    And you considered her January 19th letter to be combative?
>
> A.    That's correct.
>
> Q.    And in particular, you considered her complaint about sex discrimination to be an attempt to blackmail you; isn't that correct?
>
> A.    That's correct.
>
> Q.    And it's fair to say that when you received Kathie Brillhart's January 19th, 1993, letter, you were angry?
>
> A.    I was very upset, yes.
>
> Q.    Would you say that you were furious to have received Kathie's January 19th, 1993, letter?
>
> A.    No. I was just surprised more than anything.
>
> Q.    Now, Kathie Brillhart would have had to retract both her January 17th letter and her January 19th memos in order for you to change your mind about terminating her; isn't that correct?
>
> A.    No. We could have lived with the January 17th memo. We would have had to do some fence building, but not the 19th, no.
>
> Q.    Okay. So she - You were - It's your testimony that Kathie Brillhart would have had to have retracted her January 19th memo in order for you to change your mind about terminating her?
>
> A.    I don't know if she necessarily would have had to retract the entire memo, but that first paragraph

- 6 -

certainly would have been gone.

> Q. Okay. So, in order for you to change your mind about terminating Kathie Brillhart, she would have had to retract the very first sentence in her January 19[th], 1993, letter?
>
> A. At a very minimum.

Brillhart's testimony on cross-examination concerning her January 19th letter to Campbell was, in pertinent part, as follows:

> Q. Now, your claim of retaliation here, unlawful retaliation, is based on this letter of January 19[th]. And then your termination was nine days later, on January 28[th]. That's the chronology. You wrote the letter, and then you were terminated, and you hadn't heard about termination prior to the 19[th]; that's basically what your retaliation claim is based on, right?
>
> A. Yes.
>
> Q. Is there anything other than this chronology that we discussed that you have to present to support your claim that he retaliated against you because you wrote this letter?
>
> A. Other than the fact that I was fired, you mean?
>
> Q. Yes.
>
> A. No.
>
> Q. So it's merely the fact that you were fired after this letter was written, hadn't heard about it before, that you base your claim for retaliation; is that correct?
>
> A. Yes.
>
> Q. Let's assume a hypothetical. If the decision had been made to fire you prior to January 19[th] of '93, you don't have anything else to support your claim of retaliation; is that right?
>
> A. That's correct.

At the conclusion of Brillhart's case in chief, counsel for Philips moved for a directed verdict in its favor on both counts. The district court denied Philips' motion for a directed verdict.

As a part of its case, Philips called Campbell as one of its witnesses. At the outset

of counsel's direct examination, counsel asked Campbell to "look at the jury here and tell them, under oath, whether you considered Ms. Brillhart's gender in any way in your decision to terminate her." Campbell's response was "I never even considered it. It's not a factor to me." Counsel followed that question and answer with the question "did you consider the January 19th, 1993, memo, where she claimed you were building a case against her because she was a female, in any way in the decision to terminate her?" To which question Campbell replied, "[i]t had nothing to do with it. That decision had been made." Other testimony from various witnesses indicated that Campbell's decision to discharge Brillhart had been made several days prior to January 19, 1993, and had been approved by Campbell's superiors prior to January 19, 1993.

At the conclusion of all the evidence, counsel for Philips again moved for a directed verdict on both counts, i.e., gender discrimination and retaliatory discharge. As concerns Brillhart's claim of retaliatory discharge, counsel for Philips stated that such claim "has got to go out based on Ms. Brillhart's cross-examination," the pertinent parts of which are set forth above. The district court disagreed and said that it is a "credibility case" and added "I almost would enter judgment for the plaintiff as a matter of law based upon Campbell's testimony on Baca's [Brillhart's attorney] examination at the outset of his exam." At that point counsel for Brillhart stated he, too, would like to make a "motion." At that particular juncture the district court also stated "I made a note in my notes that it looked as though retaliation was a matter of law rather than for the jury

. . . ." Finally, the district court said "I'm not going to take retaliation away from the jury, but it is going to give me trouble later on if the jury comes in against you [meaning Brillhart] on retaliation." In any event, the district court denied Philips' motion for directed verdict and the case was submitted to the jury on both counts, with the jury returning defense verdicts on both counts.

Thereafter, Brillhart filed a post-trial motion for a new trial on her gender discrimination claim and for judgment as a matter of law on her claim based on retaliatory discharge. As indicated, the district court denied the former but granted the latter and entered judgment as a matter of law on Brillhart's retaliatory discharge claim. The district court's opinion now appears as *Brillhart v. Philips Electronic North America Corp.,* 938 F.Supp. 742 (D.N.M. 1996). The gist of the district court's order was that Campbell in testimony given during his examination by Brillhart's counsel, as a part of Brillhart's case in chief, had made an "admission" that Brillhart's letter of January 19th charging gender discrimination motivated him to fire her. In so holding, the district court relied entirely on Campbell's testimony, as set forth above, with emphasis apparently being placed on the last two questions and answers, and particularly on the last question and answer.

Though it has not been raised in this court by Philips, a procedural matter deserves at least passing comment. As we read the present record, counsel for Brillhart did not make a motion for judgment as a matter of law on Brillhart's claim of retaliatory

discharge at the conclusion of all the evidence. Failure to so move precludes a post-trial motion by Brillhart for judgment as a matter of law on her claim of retaliatory discharge. *See Aguinaga v. United Food & Com. Workers Intern.,* 993 F.2d 1463, 1470 (10th Cir. 1993) and *Hinds v. General Motors Corp.,* 988 F.2d 1039, 1045 (10th Cir. 1993). However, the district court, in its colloquy with counsel at the conclusion of all the evidence, interrupted, in a sense, Brillhart's counsel who had said he wanted to make a "motion," and, at the same time, the court stated that, although it was submitting both claims to the jury, and therefore denying Philips' motions, it was, nevertheless, of the view that judgment should quite possibly be entered as a matter of law in favor of Brillhart on her claim of retaliatory discharge. In this regard, the district court indicated that it based its belief on the testimony of Campbell, who, as indicated, had been called as an adverse witness by Brillhart's counsel, Mr. Baca, wherein Campbell testified that in order for him to change his mind about terminating Brillhart she would have had to retract her statement in her January 19th letter that "it is my contention that a case has been built against me because I'm a female." Further, the district judge added that it was going to give him "trouble" if the jury returned a verdict for Philips on Brillhart's claim of retaliatory discharge. On this state of the record we elect to consider whether the court erred in granting Brillhart's post-trial motion for summary judgment on her claim of retaliatory discharge on its merits. Certainly all were aware of the district court's concern.

In granting Brillhart's motion for judgment as a matter of law, the district court stated, that a party is bound by his own "admission" unless the "admission" is modified or explained by additional testimony of that party, the court citing *Brown v. Poland*, 325 F.2d 984 (10th Cir. 1963) and *Kansas Transport Co. v. Browning,* 219 F.2d 890 (10th Cir. 1955). However, in our view Campbell's so-called "admission" is by no means as compelling as the district court thought. It was an equivocal answer to a hypothetical question[2]. And, in any event, that answer was modified or explained by Campbell's subsequent testimony when called as a witness for Philips, where, in answer to a direct question, he categorically denied that he terminated Brillhart because of her gender or her January 19th letter. On this state of the record, the district court was, in the first instance, correct in submitting Brillhart's claim of retaliatory discharge to the jury, and it thereafter erred in granting Brillhart's post-trial motion for judgment as a matter of law.

Accordingly, the judgment in No. 97-2398 is reversed, and the case remanded to the district court with directions that it reinstate the jury's verdict and enter judgment in favor of Philips on Brillhart's claim of retaliatory discharge.

---

[2]As we read the question and answer relied on by the district court in granting Brillhart's post-trial motion for judgment as a matter of law on its claim of retaliatory discharge, the question assumed as a fact that the decision to terminate was made prior to Brillhart's letter of January 19th, and then asked Campbell if Brillhart would have had to retract the first sentence in that letter suggesting gender discrimination "in order for you [Campbell] to change your mind about terminating Kathie Brillhart." To which Campbell's answer was "At a very minimum." That question and answer, in and of itself, and standing alone, simply does not support the district court's action.

- 11 -

Further, Brillhart's appeal (No. 98-2077) of the order and judgment denying her motion for attorney's fees is dismissed as being moot, since Brillhart is no longer a prevailing party.