F I L E D
United States Court of Appeals
Tenth Circuit

DEC 21 1999

PATRICK FISHER
Clerk

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

_____

MICHELE GARCIA,

     Plaintiff-Appellant,

v.

AEROTHERM CORP., a foreign
corporation,

     Defendant-Appellee.

No. 98-2214
(D. N.M.)
(D.Ct. No. CIV-95-172-HB)

_____

## ORDER AND JUDGMENT[*]

_____

Before **BRORBY**, and **McWILLIAMS**, Circuit Judges, and **WEST**,[**] District
Judge.

_____

     Michele Garcia brought a suit in diversity in the District Court for the

District of New Mexico against her employer, Aerotherm, for intentional

infliction of emotional distress, defamation, and invasion of privacy. These

---

[*] This order and judgment is not binding precedent except under the doctrines of
law of the case, *res judicata* and collateral estoppel. The court generally disfavors the
citation of orders and judgments; nevertheless, an order and judgment may be cited under
the terms and conditions of 10th Cir. R. 36.3.

[**] The Honorable Lee R. West, United States District Judge for the Western
District of Oklahoma, sitting by designation.

claims were based on the statements of the human resources manager, who repeated the allegations of an anonymous caller who claimed to have seen Ms. Garcia and another employee using drugs in a restroom at Aerotherm. The court granted Aerotherm's motion to exclude punitive damages at the close of all the evidence. The jury returned a verdict in favor of Ms. Garcia in the amount of $669,000.00. After the verdict, Aerotherm moved for a judgment as a matter of law, and in the alternative, for a new trial and for modification of the judgment. The trial court granted the motion for a judgment as a matter of law, but did not make a conditional ruling on the motion for a new trial. We reverse the trial court's ruling on the motion for judgment as a matter of law and its ruling on punitive damages. We remand to the district court to consider the motion for a new trial, and, if that is denied, for a new trial to determine the amount of punitive damages.

# I. BACKGROUND

In 1994, Michele Garcia was working at Aerotherm as an electronic technician. On September 6, 1994, the Tuesday after Labor Day, Gloria Bouldin,[1] the human resources manager and security manager at Aerotherm, received an

---

[1] Ms. Bouldin has changed her last name to Woods since the events leading up to the litigation transpired.

anonymous phone call. The caller claimed to be employed by one of Aerotherm's subcontractors working in the same area of the facility as Ms. Garcia. The caller stated she had seen Ms. Garcia and another employee, Angela Candelaria, using cocaine in the women's restroom the previous Friday. Ms. Bouldin did not recognize the caller's voice and the caller refused to be identified. Ms. Bouldin attempted to discover the identity of the caller with the help of her personal assistant, but was unable to do so.

Ms. Bouldin, Chuck Lorenzen, and Henry Platt met in Mr. Lorenzen's office that morning to discuss the allegations. Mr. Lorenzen is the program manager at Aerotherm. Mr. Platt is the manager of the data and control systems department. Mr. Platt's department is divided into four divisions. Ms. Garcia worked in the technical services division, and Ms. Calendaria worked in the hardware systems division. After discussing the call, Ms. Bouldin, Mr. Lorenzen, and Mr. Platt decided to have Ms. Garcia and Ms. Candelaria take drug tests and to suspend them without pay pending the results of the tests. Ms. Garcia's supervisor, Mr. Dave Diaz, and Ms. Candelaria's supervisor, Mr. Mark Nesiba, were asked to come to Mr. Lorenzen's office where they were informed of the allegations. Ms. Candelaria was then called to Mr. Lorenzen's office where she was told she had been accused of taking drugs and would have to take a drug test.

During the course of this discussion, Ms. Bouldin claimed a syringe had been found in the bathroom. Ms. Candelaria left with Mr. Nesiba to go to Las Cruces to take a urinalysis, but returned a few minutes later to inform the managers they might have made a mistake. Ms. Candelaria told the managers she had given Michelle Jackson a shot of vitamin B-12 in the women's restroom the previous Friday. Ms. Candelaria suggested they had confused Michelle Jackson with Michele Garcia. Ms. Bouldin told Ms. Candelaria to take the test.

Ms. Garcia was not called to the meeting because she was still at home with back pain from an injury she suffered the previous Friday. Ms. Bouldin called Ms. Garcia at home to inform her of the caller's allegations. Ms. Garcia's mother answered the phone. Ms. Bouldin, thinking she was conversing with Ms. Garcia, repeated the accusation of drug use. When Ms. Garcia came to the phone, Ms. Bouldin told Ms. Garcia she would have to submit to a drug test by noon the next day in Las Cruces or she would lose her job. She also told Ms. Garcia she would be suspended pending the results of the drug test. Ms. Garcia then called her supervisor to inform him she would be absent the next day because she was required to take a drug test.

The next day, Ms. Candelaria resigned her position at Aerotherm. On

Thursday, September 8, Ms. Bouldin called a meeting of the secretaries to inform them Ms. Calendaria had quit after refusing to take a drug test. Later that day, Mr. Lorenzen, Ms. Bouldin, and Mr. Platt called a meeting with the members of Ms. Garcia's and Ms. Candelaria's work sections. There were twenty-five to thirty employees in attendance at that meeting including Mr. Diaz and Mr. Nesiba. Employees who attended the meeting testified Mr. Lorenzen opened the meeting by stating Ms. Garcia and Ms. Candelaria were suspected of using drugs. Ms. Bouldin then took over the meeting. Ms. Bouldin stated she had received a call from a reliable source who had seen Ms. Garcia and Ms. Candelaria injecting or shooting up cocaine in the women's restroom and the syringe had been found. In response to questions by the employees, Ms. Bouldin stated she had conducted a thorough investigation into the matter. She further stated she knew who the caller was, she would not divulge the caller's identity, and she knew the substance was cocaine. After the meeting, Ms. Jackson informed Ms. Bouldin the company might have made a mistake by suspending Ms. Garcia. Ms. Jackson told Ms. Bouldin that Ms. Candelaria had given her a shot of vitamin B-12 the Friday before Labor Day. Ms. Bouldin told her she had investigated the matter and Ms. Jackson had been excluded as a suspect because she was not at work when the incident occurred. The next day, another meeting was held with the remainder of the employees under Mr. Platt's supervision. The purpose of that meeting was the

same as that of the previous meeting.

Ms. Garcia's drug test was negative. However, she was unable to return to work until July 1995. After the accusation of drug use, Ms. Garcia became depressed, and she felt stressed, disoriented, sick, and did not sleep well for a week after the accusation had been made. Ms. Garcia filed a request for short term disability and the company told her to see its independent psychiatrist, Dr. Chapunoff. Dr. Chapunoff prescribed medication to help control her depression and for anxiety and nervousness. He testified Ms. Garcia was suffering from a major depressive disorder as a result of the allegations made against her at work. Dr. Chapunoff gave Ms. Garcia a release to return to work in July, 1995. At the time of trial, Ms. Garcia was still taking Prozac.

After the accusation, Ms. Garcia's relationships with her husband, her son and the rest of her family began to deteriorate. Ms. Garcia's husband did not believe the company would falsely accuse her of using drugs. Ms. Garcia threw him out of the house on numerous occasions, they slept in separate bedrooms, and she had outbursts of anger that were witnessed by her son. While Ms. Garcia was at home between September 1994 and July 1995, Ms. Garcia's mother had to help her take care of the house and to care for Ms. Garcia's son. Ms. Garcia's mother-

in-law testified her personality changed after the incident. She cried much of the time and was no longer interested in participating in family activities or attending church – activities she used to enjoy. Ms. Garcia's family finances also suffered as a result of her depression. She was no longer able to assist with the paperwork in her husband's construction business and she and her husband had to declare bankruptcy. Ms. Garcia was too humiliated by the accusation of drug use to tell her father about it.

Upon returning to work, the other employees were cold and reserved toward Ms. Garcia. Her supervisor made comments about her use of needles. Ms. Garcia's co-workers testified her attitude and performance at work had changed for the worse. She became paranoid. Although the drug test was negative, Ms. Bouldin never expressed any sympathy for her condition or apologized to Ms. Garcia for the public accusation. However, Ms. Bouldin testified she had never suspected or believed Ms. Garcia had been using drugs in the restroom.

Ms. Garcia brought suit against Aerotherm for the actions of its agent, Ms. Bouldin,[2] for intentional infliction of emotional distress, defamation, and invasion

---

[2] Aerotherm stipulated Ms. Bouldin was their agent or alter ego.

of privacy. At the close of Ms. Garcia's case, Aerothrem moved to dismiss the claims as a matter of law. After hearing limited argument on that issue, the court granted the motion as to punitive damages. After the jury returned a verdict in favor of Ms. Garcia, the court granted Aerotherm's motion for a judgment as a matter of law, reversing the jury's verdict on all claims.

Ms. Garcia contends the trial court erred by granting a Federal Rule of Civil Procedure 50(b) post-judgment motion for judgment as a matter of law on the sufficiency of the evidence to support her claims for intentional infliction of emotional distress, defamation, and false light invasion of privacy. She argues Aerotherm failed to assert insufficient evidence as a ground for its Rule 50(a) pre-judgment motion for judgment as a matter of law and that this failure resulted in a waiver of that issue.

## II. WAIVER OF THE MOTION FOR JUDGMENT AS A MATTER OF LAW

We agree with Ms. Garcia that issues not raised in an initial Rule 50(a) motion for judgment as a matter of law may not be asserted in a post-judgment motion for judgment as a matter of law under Rule 50(b). Fed. R. Civ. P. 50(a) and (b); *Brillhart v. Philips Elec. N. Am. Corp.*, 179 F.3d 1271, 1275 (10th Cir. 1999). However, Ms. Garcia failed to raise the issue of the sufficiency of the

-8-

Rule 50(a) motion before the trial court. In general, this court will not consider an issue on appeal that was not raised below, except to prevent manifest injustice. *Smith v. Northwest Fin. Acceptance, Inc.*, 129 F.3d 1408, 1416 (1997); *Smith v. Rogers Galvanizing Co.*, 128 F.3d 1380, 1386 (10th Cir. 1997). Other circuits have held when the non-moving party fails to raise the inadequacy of a Rule 50(a) motion in opposition to a Rule 50(b) motion, that party cannot raise waiver as an argument on appeal. *See Williams v. Runyon*, 130 F.3d 568, 572 (3d Cir. 1997) (citing *Thompson & Wallace, Inc. v. Falconwood Corp.*, 100 F.3d 429, 435 (5th Cir. 1996); *Whelan v. Abell*, 48 F.3d 1247, 1251-53 (D.C. Cir. 1995); *Gibeau v. Nellis*, 18 F.3d 107, 109 (2d Cir. 1994); *Collins v. Illinois*, 830 F.2d 692, 698 (7th Cir. 1987); *Beauford v. Sisters of Mercy-Province, Inc.*, 816 F.2d 1104, 1108 n.3 (6th Cir.), *cert. denied*, 484 U.S. 913 (1987); *Halsell v. Kimberly-Clark Corp.*, 683 F.2d 285, 293-95 (8th Cir. 1982), *cert. denied*, 459 U.S. 1205 (1983)). This rule allows the trial court to hear argument on the waiver allegation and to determine if the moving party had a legitimate excuse for failing to include the grounds for the Rule 50(b) motion for judgment as a matter of law in the pre-judgment Rule 50(a) motion. *See Thompson & Wallace*, 100 F.3d at 435. It serves judicial efficiency to permit the court to dispose of the Rule 50(b) motion without addressing the merits. *See Williams*, 130 F.3d at 572; *Thompson & Wallace*, 100 F.3d at 435. We conclude that because Ms. Garcia failed to oppose

Aerotherm's Rule 50(b) motion on the basis Aerotherm did not preserve the issue of sufficiency of the evidence under Rule 50(a)(2), she waived the issue of the inadequacy of the Rule 50(a) motion on appeal.[3]

We also conclude Ms. Garcia has failed to show manifest injustice resulting from the trial court's decision to rule on the post-trial motion. Ms. Garcia complains she was surprised by the grounds asserted in the post-judgment motion and was unable to raise her waiver issue because she did not have access to the transcripts of the trial in time to include this motion in her response to Aerotherm's Rule 50(b) motion. However, it should have been apparent Aerotherm intended to raise the issue of the sufficiency of the evidence and to move for a judgment as a matter of law on all of the claims.[4] Additionally, the

_____

[3] Ms. Garcia's argument that we should overlook her failure to raise the issue below because our review over the court's decision to grant a motion notwithstanding the verdict is *de novo* is without merit. Although we "stand in the shoes of [the district] court" in reviewing these motions, *Thompson v. State Farm Fire & Cas. Co.*, 34 F.3d 932, 941 (10th Cir. 1994), this does not abrogate the non-movant's duty to raise issues below for appellate review.

[4] Aerotherm characterized its pre-judgment Rule 50(a) motion before the trial court as a motion for a judgment as a matter of law on "all or several portions of the plaintiff's claim as a matter of law." Counsel for Aerotherm then attempted to argue the motion, beginning with the punitive damages issue, but the court limited argument on the motion and counsel was unable to fully articulate the arguments. The court granted the motion as to punitive damages because it concluded Ms. Garcia had not proved malice by clear and convincing evidence, but denied the motion as to intentional infliction of emotional distress because that tort did not require proof by clear and convincing

-10-

record indicates Ms. Garcia had adequate time to prepare her response to the motion prior to oral argument and to raise the issue of waiver before the trial court. The transcripts were available more than two months prior to the hearing on the post-trial motion for judgment as a matter of law. Ms. Garcia was not surprised or prejudiced by the subsequent renewal of the motion for judgment as a matter of law. Thus, no injustice resulted from the court's consideration of the renewed motion.

## III. MERITS OF THE JUDGMENT AS A MATTER OF LAW

Having determined Aerotherm was not barred from raising the sufficiency of the evidence issue in its Rule 50(b) motion, we now turn to the merits of the court's decision to grant Aerotherm a judgment as a matter of law on all of Ms. Garcia's claims.

Our review of the district court's decision concerning a litigant's Rule

evidence. Aerotherm did not specifically move for a judgment as a matter of law on the theory of insufficient evidence to support defamation or false light until after the jury returned its verdict. Nevertheless, it is apparent from the transcript that Aerotherm's counsel intended to move for a dismissal of all the counts on the basis of insufficient evidence and the court specifically ruled on the issue of punitive damages and upon the sufficiency of the evidence to support intentional infliction of emotional distress. The court and counsel for Ms. Garcia appear to have understood the motion to include these arguments.

50(b) motion for judgment as a matter of law is de novo. *Baty v. Willamette Indus., Inc.*, 172 F.3d 1232, 1241 (10th Cir. 1999). A judgment as a matter of law is appropriate "[i]f there is no legally sufficient evidentiary basis ... with respect to a claim or defense ... under the controlling law." *Id.* (quotation marks and citations omitted). In diversity cases, the substantive law of the forum state governs the analysis of the underlying claims, including specification of the applicable standards of proof, but federal law controls the ultimate, procedural question of whether judgment as a matter of law is appropriate. *Oja v. Howmedica, Inc.*, 111 F.3d 782, 792 (10th Cir. 1997). "In our review, we may not weigh the evidence, pass on the credibility of witnesses, or substitute our judgment for that of the jury. Further, we must construe all evidence and the inferences therefrom in the light most favorable to the non-moving party." *Kinser v. Gehl* Co., 184 F.3d 1259, 1267 (10th Cir. 1999) (quotation marks and citation omitted). We will reverse the district court if, viewing the record in the light most favorable to Ms. Garcia, we find evidence upon which the jury could have properly returned a verdict in her favor. *See Harolds Stores, Inc. v. Dillard Dep't Stores, Inc.*, 82 F.3d 1533, 1456 (10th Cir.), *cert. denied*, 519 U.S. 928 (1996).

A. DEFAMATION

The trial court concluded Ms. Garcia had not established defamation by Ms. Bouldin and granted the motion for judgment as a matter of law on the claim of defamation for the following reasons:

> Plaintiff did not present any evidence to show that Ms. Bouldin ever accused her of using drugs. The evidence indicated that Ms. Bouldin only reported that she had received an anonymous call reporting having seen Plaintiff doing drugs in the ladies bathroom. At trial, Plaintiff did not present any evidence to show that this anonymous call never occurred. Accordingly, based on the evidence presented at trial, the Court finds that Plaintiff did not establish[] defamation by Ms. Bouldin.

Ms. Garcia contends the trial court's reasoning was flawed for three reasons. First, Ms. Garcia points to allegedly untruthful embellishments Ms. Bouldin added to her report of the caller's accusation at the employee meetings and contends that these alone can suffice for defamatory statements. These were: 1) Ms. Bouldin knew who the caller was; 2) the caller was reliable; 3) Ms. Bouldin knew the substance was cocaine; 4) Ms. Bouldin thoroughly investigated the matter; and 5) a syringe was found in the trash. Second, Ms. Garcia contends Ms. Bouldin's embellishments of the caller's accusation amounted to an independent accusation that Ms. Garcia was using drugs. Third, Ms. Garcia contends Ms. Bouldin republished the defamatory statement made by the anonymous caller, making Aerotherm responsible for the defamation under the

common law of defamation, and, thus, there was no need for her to prove the call did not occur.

The jury was instructed to determine whether Ms. Bouldin's statements to Ms. Garcia's co-workers at the September 8 and 9 meetings were defamatory. It was not instructed it could consider the embellishments Ms. Bouldin allegedly made to the caller's accusation. Thus, we will consider only the statement the jury was given to determine – whether Ms. Garcia established a claim for defamation. The court defined the allegedly defamatory statement in the following instruction:

> Defamation is wrongful injury to a person's reputation. Plaintiff claims the following communication was defamatory and entitles her to recover damages: ... that Gloria Bouldin held two meetings on September 8 and 9, 1994, and told plaintiff's coworkers that plaintiff had been reported by a reliable source as having used cocaine at work and had suspended plaintiff pending the drug test results, and that such statements were defamatory, as I will explain later.

Under New Mexico law, the elements of defamation include "a defamatory communication, published by the defendant, to a third person, of an asserted fact, of and concerning the plaintiff, and proximately causing actual injury to the plaintiff." *Newberry v. Allied Stores, Inc.*, 773 P.2d 1231, 1236 (N.M. 1989) (citing SCRA 1986, 13-1002). "'A communication is defamatory if it tends so to

-14-

harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him.'" *Dominguez v. Stone*, 638 P.2d 423, 425 (N.M. Ct. App. 1981) (quoting Restatement (Second) of Torts § 559 (1976)). The underlying charge, that Ms. Garcia was using drugs in the restroom at Aerotherm, was defamatory. *See Newberry*, 773 P.2d at 1236 ("A statement is deemed to be defamatory per se, if, without reference to extrinsic evidence and viewed in its plain and obvious meaning, the statement imputes to plaintiff: the commission of some criminal offense involving moral turpitude.") Although there are no New Mexico cases addressing liability for the republication of a defamatory statement, New Mexico generally follows the Restatement in its law concerning the tort of defamation. *See, e.g., Dominguez*, 638 P.2d at 425 (quoting Restatement (Second) of Torts § 559 (1976)); *Andrews v. Stallings,* 892 P.2d 611, 615 (N.M. Ct. App. 1995) (citing Restatement (Second) of Torts § 566 (1976)). The Restatement supports the view that a republisher is responsible for the defamatory statement: "Except as to those who only deliver or transmit defamation published by a third person, one who repeats or otherwise republishes defamatory matter is subject to liability as if he had originally published it." Restatement (Second) of Torts § 578 (1976). We conclude the repetition of the defamatory statement as it appeared in the jury instructions could support Ms. Garcia's claim for defamation. The district court erred in concluding Ms. Garcia

-15-

needed to prove the call never took place.

Although not the basis for the court's decision, Aerotherm defends its judgment by arguing Ms. Garcia did not make a sufficient showing of damage to her reputation to support the tort of defamation. *See Tinkler v. United States*, 982 F.2d 1456, 1461 n.4 (10th Cir. 1992) (appellee "may defend the judgment won below on any ground supported by the record without filing a cross-appeal." (Quotation marks and citation omitted)). Ms. Garcia contends she did make a sufficient showing that her reputation was injured by the defamatory statement, but also argues she was not required to show damage to reputation to prove liability for defamation.

Ms. Garcia was required to prove damage to her reputation as an element in her claim for defamation. *See Cowan v. Powell*, 856 P.2d 251, 252 (N.M. Ct. App. 1993).[5] However, we conclude Ms. Garcia made an adequate showing of

---

[5] The court instructed the jury in accordance with New Mexico Uniform Jury Instruction 13-1002, which sets forth the general elements of a *prima facie* case of defamation. *See* NM R. CIV UJI 13-1002, SCRA 1986. Under UJI 13-1002, the plaintiff is required to prove "[t]he communication proximately caused actual injury to plaintiff's reputation." The jury was further instructed that if it found in favor of the plaintiff on the question of liability for defamation, it should then fix the amount of money which would reasonably and fairly compensate her for the actual injury proximately caused by the defamatory communication. The court listed the types of injuries compensable in a defamation action as set forth in UJI 13-1010. The jury was instructed it could award

damage to her reputation to support the jury's verdict. Although the co-employees testified at trial they did not believe the allegations, Ms. Garcia presented evidence that at least one employee believed the allegations against her. After Ms. Garcia returned to work, people made comments about needles. In viewing the evidence in the light most favorable to Ms. Garcia, we conclude a reasonable jury could have determined her reputation was damaged by the accusation of drug use. The trial court erred by vacating the jury's verdict on this claim.

B.  INVASION OF PRIVACY

The court concluded Ms. Garcia had failed to present a *prima facie* case of false light invasion of privacy because she "did not present any evidence showing Ms. Bouldin made a 'specific false statement of fact' regarding [Ms. Garcia] that placed her in a false light."

---

monetary compensation to Ms. Garcia for loss of business profits, loss of salary, personal humiliation, mental anguish and suffering, out-of-pocket expenses for medical care, harm to her good name and character among her friends, neighbors and acquaintances, and harm to her standing in the community. Ms. Garcia contends these instructions should be read together and argues the jury could have properly found liability based on any of the types of injury listed under SCRA 13-1010. However, "[t]hese jury instructions clearly establish a two-step process for reaching a verdict: the jury first determines, under SCRA 13-1002, whether the plaintiff was defamed and then, under SCRA 13-1010, determines the amount of compensation, if any, plaintiff should receive." *Cowan*, 856 P.2d at 252.

-17-

Under New Mexico law, the tort of false light invasion of privacy is closely related to the tort of defamation. *Andrews*, 892 P.2d at 625. In a false light invasion of privacy action, the plaintiff must prove she "is given unreasonable and highly objectionable publicity that attributes to [her] characteristics, conduct or beliefs that are false, and so is placed before the public in a false position." *Moore v. Sun Publ'g Corp.*, 881 P.2d 735, 743 (N.M. Ct. App.1994) (quoting Restatement (Second) of Torts § 652E cmt. b, at 395 (1977)). By her statements to the employees concerning the reasons for Ms. Garcia's suspension, Ms. Bouldin attributed false conduct to Ms. Garcia and thus, placed Ms. Garcia in a false position before the public. The trial court's decision to vacate the verdict for false light invasion of privacy is reversed.

C. INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

The elements of intentional infliction of emotional distress under New Mexico law were set forth in *Jaynes v. Strong-Throne Mortuary, Inc.*, 954 P.2d 45, 50 (N.M. 1997):

> Intentional infliction of emotional distress arises when a defendant intentionally or recklessly causes severe emotional distress through extreme and outrageous conduct....
>
> ... Extreme and outrageous conduct is that which goes beyond bounds of common decency and is atrocious and intolerable to the ordinary person.

To recover emotional distress damages, those damages must be "severe." By "severe" we intend that a reasonable person, normally constituted, would be unable to cope adequately with the mental distress engendered by the circumstances.

(Quotation marks and citations omitted).

The district court concluded Ms. Garcia had failed to show Ms. Bouldin's conduct had been extreme and outrageous under the *Jaynes* objective standard. We disagree.

Ms. Garcia presented evidence that Ms. Bouldin publicly announced Ms. Garcia was under suspicion for injecting cocaine at work and had been suspended pending the outcome of a drug test. Ms. Bouldin testified she never believed Ms. Garcia had been using drugs in the restroom. However, rather than waiting for the results of the drug test, she publicly vouched for the reliability of the anonymous caller and worsened the impact of the accusation by embellishing it with disparaging details. In addition, Ms. Garcia presented evidence that Ms. Bouldin conducted herself with contempt for Ms. Garcia and took pleasure in making these accusations. Ms. Bouldin never apologized or attempted to correct the mistake by announcing Ms. Garcia had passed the drug test. We also note Ms. Garcia put forth ample evidence that Ms. Bouldin's conduct caused her severe emotional damage. We conclude a reasonable jury could have determined, in

light of all the circumstances surrounding Ms. Bouldin's acts, that her conduct was reckless, extreme and outrageous.


## IV. PUNITIVE DAMAGES

Next, we turn to the issue of punitive damages. Ms. Garcia asserts the trial court erred by granting Aerotherm a judgment as a matter of law on her punitive damages claim at the conclusion of the evidence under Fed. R. Civ. P. 50(a). We review the district court's decision to grant the motion *de novo* and will reverse that decision if we determine the evidence was sufficient to create an issue for the jury. *See Black v. Hieb's Enter., Inc.*, 805 F.2d 360, 364-65 (10th Cir. 1986). We view the evidence in the light most favorable to the non-moving party, Ms. Garcia, and look to the law of New Mexico to ascertain the elements of punitive damages. *Id.*

In New Mexico, punitive damages are available if the plaintiff proves the defendant's conduct was malicious, willful, reckless, wanton, fraudulent, or in bad faith. NM R. CIV UJI 13-1827, SCRA 1986. In order to recover punitive damages for defamation, the plaintiff must prove actual malice. *Marchiondo v. Brown*, 649 P.2d 462, 470 (N.M. 1982). Actual malice requires proof that the defendant acted with knowledge of the falsity or reckless disregard for the truth.

*Newberry*, 773 P.2d at 1238. "Reckless disregard of the truth is not measured by whether a reasonably prudent person would have published or would have investigated before publishing; there must be sufficient evidence to permit the conclusion that defendant in fact entertained serious doubts as to the truth of the communication." *Furgason v. Clausen*, 785 P.2d 242, 248 (N.M. Ct. App. 1989) (citing SCRA 1986, Civ. UJI 13-1009). The evidence must be clear and convincing. *Newberry*, 773 P.2d at 1237. This standard requires "something more than 'preponderance of the evidence' and less than 'beyond a reasonable doubt.'" *Sands v. American G.I. Forum, Inc.*, 642 P.2d 611, 615 (N.M. Ct. App. 1982) (quoting *Addington v. Texas*, 441 U.S. 418 (1979)).

The court determined the evidence did not support a finding of punitive damages under the clearly convincing standard. We disagree. Because Ms. Bouldin admitted she never suspected Ms. Garcia of using drugs in the bathroom, we conclude a reasonable jury could have found by clear and convincing evidence that she acted in reckless disregard for the truth or falsity of the statement. Therefore, we reverse the district court's ruling on the issue of punitive damages.

## V. NEW TRIAL

Finally, we consider Aerotherm's alternative motion for a new trial. This

motion was joined with Aerotherm's renewed motion for judgment as a matter of law after the jury verdict. The motion was based on a contention that the jury's verdict was against the weight of the evidence and the trial was not fair to Aerotherm. The district court did not rule on the alternative new trial motion as required by Fed. R. Civ. P. 50(c).[6] Aerotherm asks us to consider remanding to the trial court for a ruling on its post-trial motion for a new trial. Ms. Garcia contends Aerotherm has waived its right for a ruling on its motion for a new trial because it failed to raise the issue in a cross-appeal.

First, Aerotherm was not required to raise this issue in a cross-appeal. *See Montgomery Ward & Co. v. Duncan*, 311 U.S. 243, 254 (1940) (explaining appellee may cross-assign error in the appellant's appeal concerning rulings of

---

[6] Fed. R. Civ. P. 50(c) provides:

> (1) If the renewed motion for judgment as a matter of law is granted, the court shall also rule on the motion for a new trial, if any, by determining whether it should be granted if the judgment is thereafter vacated or reversed, and shall specify the grounds for granting or denying the motion for the new trial. If the motion for a new trial is thus conditionally granted, the order thereon does not affect the finality of the judgment. In case the motion for a new trial has been conditionally granted and the judgment is reversed on appeal, the new trial shall proceed unless the appellate court has otherwise ordered. In case the motion for a new trial has been conditionally denied, the appellee on appeal may assert error in that denial; and if the judgment is reversed on appeal, subsequent proceedings shall be in accordance with the order of the appellate court.

law at trial); *Swearngin v. Sears Roebuck & Co.*, 376 F.2d 637, 639 (10th Cir. 1967) (addressing appellee's contention that the court erred in refusing to grant the motion for a new trial even though the appellee did not file a cross appeal). *Cf.* Fed. R. Civ. P., Advisory Committee's Note to Rule 50(c) (1963 Amendment) ("The appellee may assert [an error by the trial court in conditionally denying the new trial] in his brief, without taking a cross-appeal."). Second, although it would have been better practice for the trial court to have ruled upon the motion for a new trial when it ruled upon the renewed motion for a judgment as a matter of law, and for Aerotherm to have drawn the court's attention to its responsibility to rule on both motions, the motion for a new trial under Rule 50 was not lost by the court's failure to rule upon it. *Readnour v. Commercial Standard Ins. Co.*, 253 F.2d 907, 908-09 (10th Cir. 1958). We remand to the district court for a ruling on the new trial motion. *See* 9A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 2539 (2d ed. 1994) (recommending remand to the trial court when the trial court has failed to rule on an alternative motion for a new trial and the appellate court reverses its grant of judgment as a matter of law).

The ruling of the District Court of New Mexico is **REVERSED** and **REMANDED** for a ruling on the motion for a new trial. If that motion is denied,

we order the jury's verdict reinstated and remand for a trial on the issue of punitive damages.

Entered by the Court:

**WADE BRORBY**
United States Circuit Judge